UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-CV-80157-ROSENBERG/REINHART

DICK'S SPORTING GOODS, INC.,

    Plaintiff,

v.

FORBES/COHEN FLORIDA PROPERTIES,
L.P. and THE GARDENS VENTURES LLC,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss the Complaint. DE 17. The Court has carefully considered the Motion, Plaintiff's Response thereto [DE 26], Defendant's Reply [DE 29], and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Dismiss is denied.

### I.     FACTUAL BACKGROUND[1]

The Gardens Mall is a mall in the City of Palm Beach Gardens, Florida ("the City"). DE 1 ¶ 1. A planned unit development ("the Gardens PUD") granted pursuant to a City resolution permitted the development of the Gardens Mall subject to restrictions and requirements. *Id.* ¶ 31; DE 1-21. Most changes to a building subject to the Gardens PUD require an application process and amendment of the Gardens PUD. DE 1 ¶¶ 31-33, 57.

---

[1] The Court accepts as true the factual allegations in the Complaint for the purpose of ruling on the Motion to Dismiss. *See West v. Warden*, 869 F.3d 1289, 1296 (11th Cir. 2017) ("When considering a motion to dismiss, we accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." (quotation marks omitted)).

Sears constructed and holds title to the Sears Building, a two-level, self-contained structure with entrances into the Gardens Mall.[2] *Id.* ¶¶ 26, 28. Sears subleases the land upon which the Sears Building is located from Defendant Forbes/Cohen Florida Properties, L.P. ("Forbes"). *Id.* ¶¶ 25, 27; DE 1-12. Forbes leases that land, as well as the other land upon which the Gardens Mall is located, from Defendant The Gardens Venture LLC. DE 1 ¶ 39; DE 1-11. Sears and Forbes are parties to several contracts that are relevant to this case, including the Sublease of the land ("the Forbes/Sears Sublease"), a Construction, Operation and Reciprocal Easement Agreement ("the REA"), and a Supplemental Agreement. DE 1 ¶¶ 2, 25; *see* DE 1-12; DE 1-13.

Plaintiff Dick's Sporting Goods, Inc., a sporting goods retailer, began to negotiate with Sears in 2011 to sublease a portion of the Sears Building. DE 1 ¶¶ 41, 85. In 2012, the City, in collaboration with Forbes, passed a resolution that amended the Gardens PUD to require major tenants of the Gardens Mall to obtain the approval of Forbes and the City before subdividing space. *Id.* ¶¶ 47, 49. Sears subsequently sued Forbes and the City in state court, seeking a declaratory judgment that it had the right to sublease to Plaintiff and a declaratory judgment that the 2012 resolution unconstitutionally impaired its right to contract and violated its right to substantive due process. *See Sears, Roebuck & Co. v. Forbes/Cohen Fla. Props., L.P.*, 223 So. 3d 292 (Fla. 4th Dist. Ct. App. 2017). During the pendency of that litigation, Plaintiff and Sears entered into an agreement ("the Dick's Sublease") for Plaintiff to sublease a portion of the Sears Building. DE 1 ¶ 43; DE 1-17. The Dick's Sublease was conditioned on Sears obtaining approval for certain storefront and signage changes. *See* DE 1-17 at 26-27, 41-42.

---

[2] The Complaint refers to Sears, Roebuck, and Co. and Transform Operating Stores LLC ("Transform") as "Sears" collectively. *See* DE 1 at 1-2 n.1. Transform is a successor entity to Sears, Roebuck, and Co. following Sears's Chapter 11 bankruptcy. *Id.* ¶ 1 & n.1.

Following a trial in state court and an appeal, the Florida Fourth District Court of Appeal held that the 2012 resolution was unconstitutional because it impaired Sears's right to contract and because it violated Sears's right to substantive due process by giving Forbes and the City the unbridled discretion to grant or withhold approval for a subdivision of space. *Sears, Roebuck & Co.*, 223 So. 3d at 300-03. The Court further held that Sears had the contractual right under the Forbes/Sears Sublease to sublease without Forbes's approval. *Id.* at 305.

In May 2018, Plaintiff, with Sears's approval, submitted to the City an application to amend the Gardens PUD to permit two signs each on two sides of the Sears Building and three signs on another side of the building and to permit an existing entrance to be moved. DE 1 ¶ 58; DE 1-22. The City determined that the application was insufficient because an authorized signatory of Forbes had not signed it. DE 1 ¶¶ 62-63; DE 1-23. Forbes thereafter declined to sign the application, stating that it did not comply with the Gardens PUD. DE 1 ¶¶ 64-65, 68. Forbes has in the past signed applications for Gardens PUD amendments relating to such things as signage, construction of new buildings, outdoor seating, and other structural and landscaping changes. *Id.* ¶¶ 34-38.

Plaintiff and Sears submitted a revised application to amend the Gardens PUD in August 2018 that narrowed the scope of the requests made in the May 2018 application. *Id.* ¶¶ 71-72. Specifically, the August 2018 application sought permission to have one sign on each side of the Sears Building, with one side having Plaintiff's sign and two sides having Sears's signs. *Id.* ¶ 72. In November 2019, Transform—by then a successor to Sears, Roebuck, and Co.—submitted a third application for permission to have one sign on each side of the Sears Building, with one side having Plaintiff's sign and two sides having Sears's signs, and to move an existing entrance. *Id.* ¶¶ 81-82. The City refused to process the August 2018 and November 2019 applications without

a signature from Forbes. *Id.* ¶¶ 75, 82. Forbes again refused to sign the applications. *Id.* ¶¶ 76, 83. Plaintiff terminated the Dick's Sublease in December 2019. *Id.* ¶ 84.

Plaintiff's Complaint raises a claim of tortious interference with a contract and a claim of tortious interference with a business relationship against Defendants. DE 1. Defendants now move to dismiss the Complaint, arguing that Plaintiff has failed to state a claim upon which relief may be granted. DE 17.

## II. LEGAL STANDARD

A court may grant a party's motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. When ruling on a motion to dismiss, a court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *West*, 869 F.3d at 1296.

## III. ANALYSIS

The elements of tortious interference with a contract or with a business relationship are: (1) the existence of either a contract or a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the contract or business relationship, (3) the defendant's

4

intentional and unjustified interference with the contract or business relationship, and (4) damage to the plaintiff. *Seminole Tribe of Fla. v. Times Publ'g Co.*, 780 So. 2d 310, 315 (Fla. 4th Dist. Ct. App. 2001). Defendants make several arguments to support their contention that Plaintiff has failed to state a claim of either tortious interference with a contract or tortious interference with a business relationship.

### A. Intentional and Unjustified Interference

Defendants first assert that Plaintiff cannot establish the third element of a tortious-interference claim—intentional and unjustified interference—because they were not strangers to the relationship between Plaintiff and Sears. DE 17 at 11-14. For interference to be unjustified, the interfering defendant must be "a stranger to the business relationship." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th Dist. Ct. App. 2009) (quotation marks omitted). A defendant is not a stranger to the business relationship "when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Id.* at 1094-95 (reasoning that interference with one's own interest is not tortious interference); *see also Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386, (Fla. 4th Dist. Ct. App. 1999) (referring to this privilege against tortious-interference liability as "the privilege to interfere" (quotation marks omitted)).

Plaintiff do not dispute that Defendants were not strangers to the relationship between Plaintiff and Sears. Plaintiff contends, however, that its allegations that Defendants acted maliciously, taken as true, demonstrate that Defendants are not entitled to the privilege to interfere. DE 26 at 8-13. The privilege to interfere is not an absolute bar to liability. *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001). The privilege is qualified by the obligation to proceed in good faith and is a valid defense only where the interference was not

5

for an improper purpose. *Id.* "This good faith requirement . . . disqualifies litigants from asserting the privilege when they have acted with malicious or conspiratorial motives." *Id.*; *see also Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014).

Defendants counter that the Court should determine as a matter of law that they did not act maliciously or improperly by refusing to sign the May and August 2018 and November 2019 applications to amend the Gardens PUD. DE 29 at 1, 5-6. Defendants point to the fact that the REA gave them the "absolute discretion" to withhold approval, which they maintain is necessary to effectively manage the Gardens Mall. *Id.* at 4-5; DE 1-13 at 79. They also assert that signing the applications would have required them to falsely state that *they* were the parties seeking a Gardens PUD amendment and would have required them to assume responsibility for certain fees and expenses associated with processing the applications. DE 29 at 5.

Whether a defendant has gone beyond the limited privilege to interfere is generally a question for the trier of fact. *KMS Rest. Corp. v. Wendy's Int'l, Inc.,* 361 F.3d 1321, 1325 (11th Cir. 2004); *see also Burger King Corp.*, 161 F. Supp. 2d at 1338 (denying a plaintiff's motion to dismiss a tortious-interference counterclaim when the defendants sufficiently alleged that the plaintiff's "conduct went beyond the limited scope of the privilege to interfere, in that [the plaintiff] maliciously denied their application for franchise sale approval in order to retake the franchised restaurants"). Whether a defendant acted maliciously is generally determined by examining the defendant's acts in light of the totality of the circumstances. *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 685 (Fla. 3d Dist. Ct. App. 1986) ("The only way malice can be proved in the absence of direct evidence is by proving a series of acts which, in their context or in the light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man

6

pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive." (quotation omitted)).

Here, Plaintiff alleges in part that Forbes justified the decision not to sign the applications by stating that they did not comply with the Gardens PUD, which was a "pretextual," "circular," and "nonsensical" position when the applications were to amend the Gardens PUD. DE 1 ¶¶ 64-65, 68-69, 76, 79. Plaintiff alleges that Forbes also directed the City to withhold its approval of the applications. *Id.* ¶ 66. Plaintiff alleges that Forbes had signed similar applications for Gardens PUD amendments for other tenants in the past. *Id.* ¶¶ 34-38, 56-57, 67, 96, 106. Plaintiff contends that the decision not to sign the applications was made solely out of malice because Defendants harbored animosity toward Sears and Plaintiff based on Sears's successful litigation against them in state court. *Id.* ¶¶ 69, 77-78, 88, 98, 108.

Defendants have identified no cases presenting similar circumstances that would indicate that Plaintiff's allegations are insufficient to support a plausible conclusion that the privilege to interfere does not protect Defendants from liability for tortious interference. The Court must, at this stage of the litigation, accept the factual allegations as true and cannot determine Defendants' true motivation for refusing to sign the applications to amend the Gardens PUD. The Complaint's factual allegations to plausibly show that Defendants are not entitled to the privilege to interfere.

### B. Plaintiff's Relationship with Sears and Transform

Defendants next make three interrelated arguments. They first contend that the Dick's Sublease was a contract between only Sears—meaning Sears, Roebuck, and Co.—and Plaintiff that became "worthless" and no longer capable of being performed once Sears filed for Chapter 11 bankruptcy and assigned the Forbes/Sears Sublease to Transform. Defendants maintain that, therefore, the Dick's Sublease cannot be the subject of a tortious-interference claim. DE 17 at

7

14-15; DE 29 at 9. Second, Defendants assert that Plaintiff had no contractual relationship with Transform that can be the subject of a tortious-interference claim, as the Dick's Sublease was a contract between only Sears and Plaintiff. DE 17 at 15-16; DE 29 at 8-9. Third, Defendants contend that any business relationship between Plaintiff and Transform, as pled, is "vague" and "tenuous" at best. DE 17 at 16.

The Court need not resolve Defendants' first argument at this stage of the litigation. Regardless of the status of Plaintiff's relationship with Sears, the Complaint contains an allegation that Plaintiff "had a contractual relationship with Sears pursuant to the Dick's Sublease" and refers to "Sears" as Sears, Roebuck, and Co. and Transform collectively.[3] DE 1 ¶¶ 1 & n.1, 94. Taking the allegations in the Complaint as true, Plaintiff, at some point in time, had a contractual relationship with Transform. The factual allegations support a reasonable inference that Transform assumed the Dick's Sublease as it had assumed the Forbes/Sears Sublease.

This resolution of Defendants' second argument also resolves the third argument, that is, that Plaintiff has insufficiently pled the existence of a business relationship between Plaintiff and Transform. Defendants acknowledge in their Motion to Dismiss that the existence of a contract establishes the existence of a business relationship for the purpose of a tortious-interference claim. *See* DE 17 at 10 ("While interference with a contractual relationship and interference with a business relationship are treated as distinct torts in Florida, . . . Florida courts have held that a contract is sufficient . . . evidence of a business relationship.").

**C.     Causation**

Defendants assert that Plaintiff cannot establish that any of their actions caused Plaintiff to terminate the Dick's Sublease. They argue that the Dick's Sublease was conditioned on Sears

---

[3] The Court cannot determine whether and which references to "Sears" throughout the Complaint should have instead referred only to Sears, Roebuck, and Co. or only to Transform.

8

obtaining approval for certain changes by October 31, 2019, and suggest that Forbes's refusal to sign the final, November 2019 application could not have caused Plaintiff to terminate the Dick's Sublease. DE 17 at 17-18. "Imbedded within [the elements of a tortious-interference claim] is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." *Univ. of W. Fla. Bd. of Trs. v. Habegger*, 125 So. 3d 323, 326 (Fla. 1st Dist. Ct. App. 2013) (quotation marks omitted).

The Dick's Sublease gave Plaintiff the *option* to terminate if approval for changes was not obtained by a certain date. *See* DE 1-17 at 27. The fact that Transform applied for amendment to the Gardens PUD in November 2019 with a request to erect Plaintiff's sign indicates that Plaintiff had not, as of October 31, decided to terminate the Dick's Sublease. Plaintiff alleges in the Complaint that it terminated the Dick's Sublease due to Forbes continually withholding its approval of the applications. DE 1 ¶¶ 84, 90, 97, 107. These allegations are sufficient to plausibly plead causation.

### D. Breach of Contract

Defendants argue that Plaintiff has failed to allege that there was a breach of the Dick's Sublease. DE 17 at 18. However, they fail to provide any caselaw indicating that a breach of a contract is a necessary element of a tortious-interference claim. *See Seminole Tribe of Fla.*, 780 So. 2d at 315 (listing the elements of a tortious-interference claim under Florida law).

### E. Statute of Limitations

Defendants state that, while they do not seek dismissal of the Complaint in its entirety based on the statute of limitations, no claims beyond the applicable four-year statute of limitations are actionable. DE 17 at 18-19; DE 29 at 10; *see* Fla. Stat. § 95.11(3). The Complaint indicates that Plaintiff bases its claims on Defendants' failure to sign the applications beginning with the

May 2018 application. *See* DE 1 ¶¶ 96, 106 (alleging that Defendants intentionally and unjustifiably interfered by deciding not to sign the May and August 2018 and November 2019 applications). It is not apparent from the face of the Complaint that the statute of limitations bars Plaintiff's claims. *See Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) ("A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." (quotation marks omitted)).

### F.  Improper Notice

Finally, Defendants maintain that their failure to sign the November 2019 application cannot be a basis for a tortious-interference claim because Transform did not comply with the provisions of the Forbes/Sears Sublease and the REA that govern how and to whom demands must be made. DE 17 at 3 n.3, 19; DE 29 at 10; *see* DE 1-12 at 25; DE 1-13 at 74. This argument is based on facts beyond those alleged in the Complaint and, therefore, is not a basis for dismissal.

## IV.  CONCLUSION

In sum, the Court concludes that none of Defendants' arguments provide a basis for dismissal of the Complaint. For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss the Complaint [DE 17] is **DENIED**. Defendants shall file an Answer to the Complaint by **April 8, 2020**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 30th day of March, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record