UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80157-BER

DICK'S SPORTING GOODS, INC.,

Plaintiff,

v.

FORBES/COHEN FLORIDA PROPERTIES,
L.P., and THE GARDENS VENTURE LLC,

Defendants.

_____/

## ORDER ON MOTION TO QUASH
## AND MOTION FOR PROTECTIVE ORDER

Defendants Forbes/Cohen Florida Properties, L.P. and The Gardens Venture LLC (together "Forbes") served a third party subpoena on Transform Operating Stores LLC ("Transform"). Transform and Plaintiff Dick's Sporting Goods ("DSG") oppose the subpoena on the grounds that it seeks materials covered by a common-interest privilege between DSG and Transform and between DSG and Transform's predecessor entity, Sears, Roebuck and Company ("Sears"). For the following reasons, the subpoena is QUASHED.

I.     BACKGROUND AND PROCEDURAL HISTORY

Forbes is the owner/operator of the Gardens Mall in Palm Beach Gardens, Florida. Transform, as the successor in interest to Sears, owns a building that is part of the mall. Beginning in or about 2011, Sears and DSG began discussions about DSG

subleasing part of the Sears building. ¶41. To date, the sublease has never been consummated. There has been substantial litigation among the parties since at least 2014. In this current lawsuit, DSG claims Forbes tortiously interfered with its efforts to sublease a portion of the Sears building. DSG alleges that Forbes colluded with the City of Palm Beach Gardens to block the sublease.

### A. *State Court Litigation Between Forbes and Transform*

On December 3, 2019, Forbes sued Transform in Florida state court. *Forbes/Cohen Florida Properties L.P., The Gardens Venture, LLC, and the City of Palm Beach Gardens v. Transform Operating Stores, LLC,* Case No. 502019CA015376XXXXMB.[1] Forbes asked for a declaratory judgment to clarify its rights and obligations relating to the sublease. Transform filed counterclaims against Forbes and two other defendants.

### 1. 2020 Requests for Production to Transform

Forbes' first Request for Production in the state court litigation sought discovery from Transform of communications among DSG, Sears, and Transform. *Transform* Docket Entry 104. Transform objected to producing these materials because of the common-interest privilege. *Transform* Docket Entry 161. On November 9, 2020, Forbes moved to compel discovery responses from Transform and argued that Transform could not assert a common interest privilege with DSG.

---

[1] Without objection by any party, I have taken judicial notice of the filings in the state court case. ECF No. 158.

*Transform* Docket Entry 192. The state court allowed further briefing, conducted an *in camera* review, and held an evidentiary hearing. ECF No. 123-9 at 2. In a November 30, 2021, Order, the state court held that a common-interest privilege applied to communications between Sears and DSG and between Transform and DSG for the time period beginning in 2014. ECF No. 123-9 at 3.

 2. <u>2022 Subpoena to DSG and Motion to Reconsider</u>

A year later, on October 28, 2022, Forbes served a notice of its intent to issue a third-party subpoena to DSG in the state court litigation asking for "documents and communications produced to or otherwise received by Dick's Sporting Goods, Inc. ("Dick's") from Transform Operating Stores, LLC, . . . [that] were produced or received after the initiation of the Dick's – Forbes litigation (USDC – Southern District Case No. 9:20-cv-80157)." ECF No. 143-4. Transform objected. ECF No. 143-5.

In March 2023, after the state court struck the subpoena notice as a procedurally improper request for reconsideration, Forbes asked the state court to reconsider its prior common-interest privilege order; Forbes made the same arguments that it now makes to this Court. ECF No. 143-9. On August 29, 2023, the state court denied Forbes' motion for reconsideration.

 *B. Federal Court Litigation*

On February 3, 2020, less than two weeks after Transform filed its counterclaims against Forbes in state court, DSG brought this two-count Complaint against Forbes. ECF No. 1. It alleges Forbes tortiously interfered with the contractual and business relationship between Sears and DSG.

1. <u>2020 Requests for Production to DSG</u>

"Forbes served its First Set of Requests for Production to DSG on September 11, 2020." ECF No. 132 at 7. DSG objected in part based on privilege. On May 25, 2021, DSG served an amended 98-page privilege log on Forbes. ECF No. 123-8. DSG asserts, and Forbes does not contest, that the log included 68 documents that were withheld on the basis of the common-interest privilege. ECF No. 123 at 6. Forbes did not ask the Court to overrule DSG's assertion of the common-interest privilege.

2. <u>2023 Subpoena to Transform</u>

Almost two years later, April 23, 2023, while its motion for reconsideration was pending in state court, Forbes issued a Rule 45 subpoena to Transform for the same communications it had previously sought in both the state and federal litigation:

> Copies of all Documents and Communications in its possession, custody, or control between Transform (including but not limited to its attorneys, officers, employees, agents, representatives or others acting on its behalf, etc.), or anyone else acting for or on behalf of Transform or Sears (including, but not limited to Sears Holding or any of its affiliates), or Edward Lampert, on the one hand, and DICK's on the other hand, relating in any way to Forbes, Garden Venture, Sidney Forbes, Nate Forbes, David Forbes, Tom Cairnes, the City, Robert Carson, Esq., R. Max Lohman, Esq., Natalie Crowley, The Gardens Mall, JPRA Architects, LTD, Development Application(s), May Development Application, August Development Application, November Development Application, DICK's Sublease, 2014 Sears Litigation, 2018 Sears Litigation, 2019 Transform Litigation, Forbes/Sears Sublease, Gardens PUD, the Opinion, and the Sears Building.

ECF No. 143-10. The subpoena covered the time period from January 1, 2012 to the present. *Id.*

4

Transform served written objections on May 1, 2023. ECF No. 123-2. It asserted the attorney-client privilege, work-product privilege, and common-interest doctrine.[2] Insofar as the subpoena covered non-privileged materials, "Transform further object[ed] pursuant to Fed. R. Civ. P. 26(b)(2)(C) on the grounds the Subpoena is cumulative, duplicative, redundant, unduly burdensome, and intended for the purpose of harassment." *Id.* at 4. Transform noted that the subpoena sought the same documents already produced in the state court litigation. Transform also said (1) the subpoena was overbroad, harassing, unduly burdensome, and sought information irrelevant to the claims and defenses in the federal action, (2) the Apex doctrine applied to Mr. Lampert's communications, and (3) Forbes had not shown a compelling need for the subpoenaed materials, had not pursued less intrusive alternatives, and was forcing Transform "to incur substantial expense without reasonable compensation." ECF No. 123-2 at 6.

On May 15, DSG moved for a protective order. ECF No. 123. It requested "an order prohibiting the production of documents and communications with Transform that are protected by the attorney-client and common interest privileges, including those communications involving counsel for Sears and DSG and counsel for Transform and DSG, which relate to their efforts to effectuate the DSG sublease and vindicate their rights to do so through litigation." ECF No. 123 at 6.

---

[2]Transform says all responsive, non-privileged documents have been produced. ECF No. 123 at 6 (adopted by ECF No. 143).

Forbes responded to DSG's motion on June 2. ECF No. 124. Forbes argued that Transform had changed its legal theory in the state court litigation — it initially asserted rights under a 2015 sublease as a successor in interest to Sears but now asserted rights under a 2019 lease between Transform and DSG ("Fifth Amendment"). Forbes further argued that DSG's claims in this litigation are based on the 2015 Sublease, not on the Fifth Amendment. Forbes said that no common-interest privilege exists because DSG and Transform are pursuing different legal theories in their respective litigations. Forbes argues that the state court's November 20, 2021, Order arose when DSG and Transform were pursuing consistent legal theories and before the state court limited discovery to 2019 forward. ECF No. 124. Forbes also argues that the crime-fraud exception applies because DSG and Transform entered into a "wrongful conspiracy" to "ripen" the case. *Id.* at 12-16.

DSG filed a Reply on June 23. It argued that (1) Forbes had never properly challenged DSG's 2021 assertion of the common-interest privilege, (2) on the merits, a common legal interest has existed since 2014, (3) the crime-fraud exception does not apply, and (4) the subpoena seeks materials that are irrelevant, cumulative and/or harassing. ECF No. 132. DSG filed under seal portions of some of the exhibits from its Reply. ECF No. 138.

With leave of Court, DSG supplemented its protective order motion on July 24. ECF No. 142. It identified the 68 assertedly-privileged documents that were responsive the Transform subpoena. ECF No. 142-1. These same documents had been listed on a privilege log served on Forbes in May 2021. DSG also disclosed that

there were communications between counsel for DSG and counsel for Transform that occurred between December 2019 and the present, that relate to this case and the parallel state case, and that would be responsive to the Transform subpoena. DSG re-asserted the arguments from its Reply that these emails were covered by a common-interest privilege, were irrelevant to the claims and defenses in this litigation, were cumulative, and are being sought only to burden and harass DSG. ECF No. 142 at 2 (incorporating ECF No. 132 at 12-20).

On July 24, Transform moved to intervene, to join DSG's motion for protective order, and to file its own brief. ECF Nos. 143, 145. I declined Transform's request to intervene as a party, treated the motion to intervene and the brief as a third-party Motion to Quash under Rule 45(d)(3)(A), and granted the request to adopt DSG's pleading. ECF No. 146. Transform's brief argues that (1) on the merits, a common-interest privilege exists, (2) principles of collateral estoppel preclude Forbes from re-litigating the state court's order, (3) the crime-fraud exception does not apply. ECF No. 143.

On August 21, Forbes responded to DSG's supplemental filing and to Transform's filing. ECF No. 157. Forbes did not address the merits, other than to say, "Defendants note with disappointment that the two movants, who are parties in different courts, attempt to assert consistent but irreconcilable positions before this Court when different positions have been asserted and admitted in the separate proceedings. Defendants believe this charade will become evident to the Court in an evidentiary hearing on Dick's Motion for Protective Order." *Id.* at 1. Forbes requested

an evidentiary hearing and also sought depositions in advance of any such hearing. *Id.* at 1-2.

## II.   LEGAL PRINCIPLES

All civil discovery must be relevant to the claims or defenses in the litigation in which the discovery is sought. Fed. R. Civ. P. 26(b)(1). Once a proper objection is lodged, the party seeking discovery has the burden of proving relevance. *Cardenas v. Toyota Motor Corp.*, No. 18-CV-22798, 2020 WL 5291936, at *1 (S.D. Fla. Sept. 3, 2020) (J. Louis).

Any "discovery dispute relating to a written response or objection to a discovery request or to a privilege log [must be submitted] within twenty-eight (28) days of service of the written response or objection that is the subject of the dispute." SDFL Local Rule 26.1(g)(2)(A)(i). "Failure to submit a discovery dispute to the Court within [28 days], absent a showing of good cause, may, in the Court's discretion, constitute grounds for denial of the requested relief." SDFL Local Rule 26.1(g)(2)(B); *see also, e.g., Bank of Mongolia v. M & P Glob. Fin. Servs., Inc.*, 258 F.R.D. 514, 518 (S.D. Fla. 2009) (J. Rosenbaum) (discovery objection is waived if not timely asserted) (collecting cases).

A third party served with a subpoena *duces tecum* under Federal Rule of Civil Procedure 45 may serve a written objection on the party serving the subpoena. Fed. R. Civ. P. 45(d)(2)(B). If an objection is made, the propounding party "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

8

Alternatively, the subpoenaed third party can move to quash the subpoena if, among other reasons, it "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A). The person moving to quash on privilege grounds bears the burden of establishing the privilege. *In re Subpoena Dated June 18, 2020*, No. 20-MC-82327-BER, 2021 WL 7540812, at *3 (S.D. Fla. Apr. 14, 2021) (J. Reinhart). The third party also can object that the subpoenaed evidence is irrelevant or disproportionate to the needs of the case. *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020); *Davis v. Nationwide Ins. Co. of Am.*, 19-CV-80606, 2020 WL 7480819, at *3 (S.D. Fla. Dec. 18, 2020) (J. Matthewman).

A party who is not the target of the subpoena can challenge a third-party subpoena if it "has a personal right or privilege with respect to" the materials subpoenaed. *E.g., Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016) (J. Snow). Even if no such right or privilege exists, the party can move for a Rule 26(c) protective order on relevance grounds. *See, e.g., Auto-Owners Ins. Co. v. SE. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

A "party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014). So, by not responding to an opposing party's legal argument, a party concedes that argument *See, e.g., Est. of Pankey by Terry-Brown v. Carnival Corp.*, No. 22-CV-24004, 2023 WL 5206032, at *2 (S.D. Fla. Aug. 14, 2023) (J. Bloom) (citing *Jones*); *Campbell v. Boies, Schiller, Flexner LLP*, 543 F. Supp. 3d 1334, 1341 (S.D. Fla. 2021) (J. Moore) (same); *Worley v. Carnival Corp.*, No. 21-CIV-23501, 2023

9

WL 1840154, at *2 (S.D. Fla. Jan. 30, 2023) (J. Goodman) (collecting cases), *report and recommendation adopted,* No. 21-23501-CIV, 2023 WL 3028038 (S.D. Fla. Apr. 20, 2023).

### III.   DISCUSSION

DSG and Transform (collectively "Respondents") assert privilege objections to two categories of documents: (1) 68 documents created before this case was filed and listed in DSG's 2021 privilege log ("the pre-filing communications"), and (2) other unlogged responsive documents that post-date the filing of this litigation ("the post-filing communications").[3]

### A. *Post-Filing Communications*

Respondents object that "any communications between counsel post-dating DSG's complaint—filed on February 3, 2020—have no relevance to the claims or defenses in this case, which center on Forbes's tortious interference with DSG's attempts to effectuate its sublease with Sears, and then Transform from 2011

---

[3] Under Local Rule 26.1(e)(2)(C), there is no requirement to serve a privilege log for "written and oral communications between a party and its counsel after commencement of the action and work product material created after the commencement of the action." At a hearing on September 6, 2023, Forbes argued for the first time that Respondents were required to provide a privilege log for the post-2019 communications. Forbes argued that Local Rule 26.1(e)(2)(C), by its plain terms, categorically did not apply to common-interest communications. Because I find that the subpoena should be quashed, I need not resolve the scope of the Local Rule. I note, however, that once a common-interest relationship exists, "the attorney for one [party] becomes the attorney for the other." *Visual Scene, Inc. v. Pilkington Brothers, PLC*, 508 So. 2d 437, 440 n.3 (Fla. 3d DCA 1987) (citing *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979)).

through December 2019." ECF No. 132 at 20. Forbes does not respond to this argument, so it is conceded.

In any event, the record does not show that the broad discovery sought by the subpoena is relevant to the claims and defenses, nor is it proportional to the needs of the case at this late date. Fed. R. Civ. P. 26(b)(2)(C) (court must "on its own" limit "the frequency or extent of discovery . . . [that] is outside the scope permitted by Rule 26(b)(1)"). The claims here are that Forbes tortiously interfered with DSG's ability to sublease space at the Gardens Mall. Forbes has not asserted any counterclaims. Its affirmative defenses are (1) failure to state a claim, (2) statute of limitations, (3) any harm was caused by DSG's own actions, (4) failure to mitigate damages, (5) Florida Sunshine Law, (6) failure of conditions precedent, and (7) the sublease was never properly assigned by Sears as the debtor in bankruptcy. The subpoena seeks communications between DSG and Sears, and DSG and Transform:

> relating in any way to Forbes, Garden Venture, Sidney Forbes, Nate Forbes, David Forbes, Tom Cairnes, the City, Robert Carson, Esq., R. Max Lohman, Esq., Natalie Crowley, The Gardens Mall, JPRA Architects, LTD, Development Application(s), May Development Application, August Development Application, November Development Application, DICK's Sublease, 2014 Sears Litigation, 2018 Sears Litigation, 2019 Transform Litigation, Forbes/Sears Sublease, Gardens PUD, the Opinion, and the Sears Building.

Forbes has failed to meet its burden of showing that this broad request for post-filing communications among DSG, Sears, and Transform is relevant to the claims

and defenses in this case or proportional to the needs of the case, even if those communications are not privileged. *See* ECF No. 132 at 19-20.[4]

### B. *The Pre-Filing Communications*

Forbes has waived its right to compel production of the 68 logged documents. In its 2020 Requests for Production, Forbes asked DSG for the same documents that Forbes had requested from Transform in the state court litigation. DSG objected on the same common-interest privilege grounds that were at issue in the state court litigation. As Respondents correctly note, Forbes never asked this Court to overrule DSG's assertion that these documents are privileged.

Forbes has not addressed Respondents' argument that it failed to timely bring the privilege issue to the Court in 2021, nor has Forbes argued there is good cause to set aside that waiver. On that basis, alone, Forbes is not entitled to discovery of the documents listed in the privilege log.

The fact that Forbes now seeks to obtain the documents from Transform, rather than from DSG, does not change the analysis. Forbes has been on notice for over two years that DSG and Transform assert a common-interest privilege over these materials. Forbes never brought that issue to the Court. That lack of action

---

[4] Ordinarily, arguments cannot be made for the first time in a reply because the opposing party does not get the opportunity to be heard on the new argument. *See, e.g., MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1349 (S.D. Fla. 2021) (J. Altman) (noting it is "well-established" that arguments not properly presented in a party's initial pleading are waived). Here, however, Forbes had the opportunity to file a supplemental brief that responded to Respondents' relevance arguments.

waived Forbes' right to relief from DSG's objection. Forbes cannot avoid this waiver by subpoenaing the same documents from a third party (Transform). The relief that was potentially available to Forbes in response to DSG's objection was an order that the disputed documents are not privileged. Forbes cannot now belatedly obtain this relief through a different procedural vehicle.

### C. Collateral Estoppel

In the alternative, for purposes of Transform's Motion to Quash, collateral estoppel applies. Therefore, I cannot revisit the state court's decision that a common-interest privilege exists over the contested documents.

As a federal court exercising diversity jurisdiction, I must apply Florida law to determine the preclusive effect of the state court's privilege order. *CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017); *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984). "In Florida, collateral estoppel bars relitigation of the same issue between the same parties which has already been determined by a valid judgment." *Zikofsky v. Mktg. 10, Inc.*, 904 So. 2d 520, 525 (Fla. 4th DCA 2005) (citations omitted). "[C]ollateral estoppel, often referred to as issue preclusion or estoppel by judgment, consists of the following five elements: (1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to the parties of the current proceeding; and (5) the issue was actually

litigated." *Fernandez v. Cruz*, 341 So. 3d 410, 413 (Fla. 3d DCA 2022) (citing *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015)).

All of these elements are satisfied, here, so Transform can invoke collateral estoppel against Forbes. Forbes and Transform were both parties to the state court case. The common-interest privilege issue (initially and on motion for reconsideration) was presented, actually litigated, and explicitly determined in the state court case. Forbes had a full and fair opportunity to litigate that issue. Forbes and Transform were both parties to the state court litigation. [5]

Collateral estoppel does not apply "if there is a change in circumstances creating a new issue to be litigated." *Emiddio v. Fla. Off. of Fin. Regul.*, 147 So. 3d 587, 590 (Fla. 4th DCA 2014); *see Krug v. Meros,* 468 So. 2d 299, 303 (Fla. 2d DCA 1985) (collateral estoppel "does not apply where unanticipated subsequent events create a new legal situation."). Forbes argues two reasons why circumstances have changed: (1) Transform has changed its legal theory in the state court litigation and (2) crime-fraud exception. Forbes made these same arguments to the state court in

---

[5] Because Transform can assert collateral estoppel as a former party to the state litigation against Forbes, I need not decide whether DSG independently could assert collateral estoppel against Forbes. *See Zikovsky,* 904 So. 2d at 526 ("collateral estoppel can apply to those who, though not actually named in the prior lawsuit, are situated in such a way as to be considered a party 'in the larger sense.'")(citation omitted); *Fernandez*, 341 So. 3d at 414 (non-party to prior action can assert collateral estoppel if they had "an interest in the action such that she will be bound by the final judgment as if she were a party.").

its motion to reconsider. The state court denied that motion. Forbes is collaterally estopped from challenging the state court's reconsideration decision.

WHEREFORE, it is ORDERED that:

1.  Transform's Motion to Quash [ECF No. 145] is GRANTED.

2.  DSG's Motion for Protective Order [ECF No. 123] is GRANTED.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 8th day of September 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE