UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80157-CIV-ROSENBERG-REINHART

DICK'S SPORTING GOODS, INC.,

      Plaintiff,

v.

FORBES/COHEN FLORIDA PROPERTIES, L.P.,
and THE GARDENS VENTURE LLC,

      Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW**

Defendants Forbes/Cohen Florida Properties, L.P. ("Forbes") and The Gardens Venture LLC ("Gardens Venture" and together with Forbes, "Defendants"), hereby move for summary judgment of the Complaint [ECF No. 1] of Plaintiff Dick's Sporting Goods, Inc.'s ("Dick's") for tortious interference with a contractual relationship and tortious interference with a business relationship, and respectfully state as follows:

**I.    Introduction**

There is no dispute that Forbes is not a stranger to the transaction between Dick's and Sears Roebuck and Co. ("Sears") and that it had the right to enforce the REA and Governing Contracts (defined below). *See* Defendants' Statement of Material Facts ("SOF"), ¶¶ 62 & 1. There is no dispute that Dick's took subject to these documents which are specifically mentioned in the sub-sublease that it entered into with Sears in 2015 for the second floor of the Sears Store (the "Dick's Sublease"). SOF ¶ 2. The Dick's Sublease was for a portion of the Sears store at the Gardens Mall in Palm Beach Gardens, Florida ("Gardens Mall" or the "Center"). *Id*. There is no dispute that Sears had the right to sublease the Sears store under the Forbes/Sears Sublease.[1] SOF, ¶ 25. There

---

[1] In 2014, Sears filed suit against Forbes seeking a declaration of its right to sublease a portion of the Sears store and that Dicks could be declared a Major tenant for the purposes of signage in connection with that sublease. SOF ¶¶ 33-34. The Fourth District Court of Appeals ruled Sears was entitled to sublease a portion of the Sears Building to Dick's as a space tenant, but as to whether Dick's could be considered a Major under the REA, ruled "[t]he remaining issues are without merit and we affirm without comment." SOF ¶ 36; *see also Sears, Roebuck & Co. v. Forbes/Cohen Fla. Properties, L.P.*, 223 So. 3d 292, 297 (Fla. 4th DCA 2017). In the Fourth DCA's Opinion, it recognized that "Forbes

is also no dispute that Forbes has the absolute right to exercise its contractual rights and enforce its contractual obligations in connection with the sublease of the Sears store even if it is proven it is enforcing them maliciously, provided it did not use improper means. SOF, ¶¶ 1 -2; *see also Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 545 (Fla. 5th DCA 1985). There is no dispute that Dick's did not take an assignment of all of Sears' rights, that Sears retained its Major tenant signage rights and that Dick's is not a Major under the express provisions of the REA. SOF, ¶¶ 26, 49, 11, 34-36, & 38. Therefore, the only question the Court has to decide on summary judgment in this case is whether Forbes used improper means to enforce its contractual rights under the REA to prevent Dick's from obtaining exterior signage rights only afforded to Majors under the REA and the other documents governing the operation of the Gardens Mall.

The short answer is no, for the following reasons. Dicks alleges that Forbes acted improperly when it allegedly colluded with the City to pass an unconstitutional amendment to the PUD through Resolution 20, 2012, asserted undue influence over the City with respect to amendments to the PUD, and refused to sign development applications to amend the PUD to provide Dick's with certain exterior signage rights not permitted under the REA. *See* SOF, ¶¶ 30, 57.

First, the improper means that Dick's claims to have occurred regarding the passing of Resolution 20, 2012 occurred before the execution of the 2014 letter of intent between Sears and Dick's and the 2015 Dick's Sublease, and therefore occurred prior to any business or contractual relationship between Dick's and Sears was established. SOF, ¶¶ 29-32. In addition, the alleged improper means regarding Resolution 20, 2012 were taken in response to Sears's attempts to use the Sears store for a mini-mall or mall extension in competition with the Center– not to sublease to Dick's. *Id.* Temporally, there can be no dispute that Resolution 20, 2012 was **not** passed in response to the 2014 letter of intent between Sears and Dick's or the Dick's Sublease executed in

---

conceded that Sears had the right to sublease so long as it complied with the sublease and the R.E.A.*"* SOF ¶ 37. Subleasing a portion of space in a Major tenant space did not provide exterior signage rights to that sublessee. SOF, ¶¶ 15-16. Only Major tenants and restaurants are entitled to exterior signage rights, while space tenants are only entitled to interior signage rights under the REA. SOF, ¶ 13. Defendants did not object to Dick's obtaining interior signage rights consistent with that of a space lessee under the REA. SOF, ¶ 16. When Land's End subleased from Sears it was not assigned Major tenant rights and was not entitled to exterior signage rights. SOF ¶ 16. The Fourth DCA's Opinion states that the REA's "signage criteria does not expressly prohibit a sublessee from installing a sign nor does it prohibit Sears from granting a sublessee the right to install a sign." SOF, ¶ 36; *see also* Compl. Ex. 1, p. 16. It does not state that Dick's was entitled to *exterior* signage rights and the Fourth DCA also held that Dick's is not a Major. SOF, ¶¶ 34-37. Therefore, the only signage rights that could be provided to Dick's under the Dick's Sublease pursuant to the REA was that of a space lessee. SOF, ¶ 15.

2015, and it is factually undisputed that the passing of Resolution 20, 2012 had nothing to do with Dick's subleasing a portion of the Sears store from Sears and everything to do with Sears' attempt to use the Sears store as a mall extension or mini-mall at the Center. *Id.*

Second, the 2015 Dick's Sublease was a transaction between Dick's and Sears that occurred well before the Sear's Bankruptcy,[2] was never assumed or assigned by the debtor, and thus, any improper means being alleged by Dick's must have occurred after 2019 and only could have occurred with respect to whatever contractual rights or business relationship Dick's purportedly had based upon a "Fifth Amendment" to the Dick's Sublease entered into between Dick's and Transform Operating Stores, LLC.[3] SOF, ¶ 41. Since the execution of the "Fifth Amendment" on June 27, 2019, the only action Forbes took with respect to Dick's was to refuse to sign development applications for exterior signage not permitted to be given to anyone other than a Major under the REA, something Dick's admittedly is not. SOF, ¶ 57.

Stated simply, there is no proof that Forbes used improper means to enforce its contractual rights under the REA and no proof could ever exist that improper means were used by Forbes to enforce its contractual rights under the REA.

Under established law, there can be no cause of action for interference where the defendant is not a stranger to the alleged contract or business relationship of the plaintiff, but rather is asserting its contractual and legal rights and entitlements. Defendants filed a Motion to Dismiss (ECF No.17), and this Court found that Defendants were not strangers to the alleged relationship but left open the factual determination of whether malice could defeat the privilege. *See* SOF, ¶ 62. Only a particular form of malice, use of improper means, can act as an exception to the immunity afforded to a party from a claim of tortious interference when that party is otherwise enforcing its contract. *See KMS Restaurant Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004). Forbes cannot as a matter of law, interfere with Dick's relationship with Sears or its successors by enforcing its legal and contractual rights and obligations, even if the enforcement allegedly occurred for malicious reasons, because no improper means were used by Forbes to enforce its contractual rights in connection with the Major signage rights under the REA sought by Dick's.

---

[2] *In re Sears Holdings Corporation, et. al*, Case No. 18-23538 (the "Sears Bankruptcy").

[3] Transform Operating Stores, LLC is a subsidiary of Transform Holdco LLC (together, "Transform"), which acquired certain assets of Sears in the Sears Bankruptcy, one asset of which was the Forbes/Sears Sublease between Forbes and Sears for the Sears store. It is undisputed that the 2015 Dick's Sublease was not assumed by the debtor and assigned in the Sears Bankruptcy and was not one of the assets purchased by Transform in the Sears Bankruptcy. SOF, ¶ 41.

*See Fla. Tel. Corp.*, 468 So. 2d at 545 (holding Defendant was privileged to interfere to assert its own contractual rights "regardless of motive"); *Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980) ("[I]f the privilege to protect or further ones legitimate economic situation is present, the concomitant presence of malice or ill will, and the expression thereof, is not actionable as a tortious interference."); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) ("[S]o long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable.").

As to Gardens Venture, Dick's alleges that although the City initially required a Statement of Ownership and Designation of Authorized Agent and a Financial Responsibility Form signed by an authorized signatory of Gardens Venture, LLC with respect to the development application submitted by Dick's on behalf of Sears on April 27, 2018,[4] the City thereafter clarified that it considers Forbes—and not Gardens Venture—to be the "owner" for purposes of the Statement of Ownership and Financial Responsibility Forms and therefore requires Forbes' signature. SOF, ¶ 53. Dicks does not allege, nor are there any facts that support, independent allegations of interference by Gardens Venture. Compl., ¶ 22. Instead, Dick's alleges that "Forbes is the sole member of Gardens Venture and controls Gardens Venture" and lumps Defendants together asserting that "[t]he methods that Forbes and Gardens Venture have used, engineering pretextual and illusory "objections" to rudimentary, ordinary course amendments to the PUD, and surreptitious dealings with the City, constitute improper methods." *Id*., at ¶¶ 22, 79.

Accordingly, Defendants seek the entry of summary judgment in their favor as to Dick's claims for tortious interference with a contractual relationship and tortious interference with a business relationship, and entry of a Final Judgment.

**II.   Summary of the Argument**

The Complaint contains two counts, tortious interference with contractual relationship and tortious interference with a business relationship, against Defendants alleging that Dick's was unable to obtain exterior signage rights from Sears and the company which purchased the Forbes/Sears Sublease in the Sears Bankruptcy, Transform. SOF, ¶ 61. It is Dick's contention that Forbes wrongfully prevented Dick's from obtaining signage rights afforded to Majors under the REA.

---

[4] Although submitted on April 27, 2018, this development application is defined in Dick's Complaint as the May Development Application. As set forth *infra*, it is defined herein as the April 2018 Development Application.

The essential facts of this case are undisputed. Plaintiff, Dick's, was a prospective sub-subtenant of Sears for a portion of Sears lease premises on the second floor of the Sears store at the Gardens Mall. SOF, ¶¶ 2, 12. Defendant Forbes was the landlord of Sears for the Forbes/Sears Sublease at the Gardens Mall. SOF, ¶ 21. Forbes leased the land on which the Gardens Mall is located pursuant to a Land Lease with the MacArthur Liquidating Trust. SOF, ¶ 27. Gardens Venture is the successor in interest to the MacArthur Liquidating Trust under the Land Lease. *Id*. The Forbes/Sears Sublease is encumbered by and subject to a Construction, Operation and Reciprocal Easement Agreement (the "REA") applicable to the Center, which governs the use rights and the signage rights at the Center, along with the other Governing Contracts applicable to the Center (defined below). SOF, ¶¶ 5, 8.

The contracts applicable to the Gardens Mall and more specifically the Sears store, include (1) the REA and its amendments (Compl. Ex. 13), (2) the Supplemental Agreement between Forbes and Sears for the Sears store (Compl. ¶ 25), (3) the Forbes/Sears Sublease between Forbes and Sears for the Sears store (Compl. Ex. 12), (4) the Land Lease between Forbes and Gardens Venture as the successor to the MacArthur Liquidating Trust (Compl. Ex. 12), and (5) the Settlement Agreement between Forbes and Transform entered into in connection the Sears Bankruptcy (collectively, the "Governing Contracts").[5] SOF, ¶ 1. Forbes is a party to the REA, the Supplemental Agreement, the Forbes/Sears Sublease, the Land Lease, and the Settlement Agreement. *Id.* Forbes owns the Gardens Mall and leases the land on which the Gardens Mall is located from Gardens Venture. *Id.* The Dick's Sublease is subject to the Governing Contracts and acknowledges the need to obtain the necessary approval required by those documents to obtain the additional exterior signage and change of entrance location required by the Dick's Sublease. SOF, ¶ 13, 23-24. Sears retained its Major signage rights under the REA when entering into the Dick's Sublease. SOF, ¶ 3. While Sears was a party to the REA, Transform is not a party to the REA and could not deliver Major signage rights to Dick's or anyone else. SOF, ¶ 49.

On or about April 27, 2018, without prior contact with Forbes, Dick's submitted a development application on behalf of Sears to the City for an amendment to the Gardens PUD to allow Sears to display two exterior signs (one for Sears and one for Dick's) on the south and east façades of the Gardens Mall, three signs on the north façade of the Gardens Mall for Sears and

---

[5] The Gardens Mall is also subject to the PUD applicable to the Center (Compl. ¶31 & Ex. 21). Forbes was the applicant with respect to the uses and operations at the Gardens Mall as regulated by the PUD.

Dick's and to modify and to relocate the entrance on the south elevation (the "April 2018 Development Application"). SOF, ¶ 51. In or around August of 2018, Dick's and Sears submitted a revised development application to the City, seeking an amendment to the Gardens PUD to add exterior signage for Dick's in addition to Sears to the exterior of the Gardens Mall and to modify and relocate the entrance on the south façade ("August 2018 Development Application"). SOF, ¶ 54. The Project Narrative in the April 2018 Development Application sought to allow two tenants, Dick's and Sears, to occupy one Major tenant space (*i.e.*, the Sears store) with one tenant on the first floor and the other tenant on the second floor, but granting both tenants Major tenant signage rights. SOF, ¶ 56. This is a per se violation of the REA. *Id.* Sears could assign the entirety of its rights with respect to the Sears store to Dick's and grant Dick's the Major signage rights it had or grant Dick's interior signage rights consistent with that of a space lessee, but it could not grant Dick's additional Major tenant signage rights that it did not have, and which would directly violate the REA. The City rejected both the April 2018 Development Application and August 2018 Development Application because they failed to comply with City Ordinance § 78-46, which requires the sublessee seeking a PUD amendment to provide the City with a copy of the lease agreement and written consent of the owner. SOF, ¶ 55. On November 20, 2019, after entering into the "Fifth Amendment," Transform, a non-party to the REA, sent a form development application (the "2019 Development Application") to Forbes' prior litigation attorney with a letter requesting that the attorney have Forbes sign Statement of Ownership and Financial Responsibility Forms to submit to the City. SOF, ¶ 57. Transform threatened that if Forbes did not agree to sign the forms, it would treat Forbes' refusal to do so as a "breach" of (unspecified provisions of) the Forbes/Sears Sublease. *Id.* On December 13, 2019, the 2019 Development Application unsigned by Forbes was submitted to the City. SOF, ¶ 59. Forbes did not give written consent because if it accepted the PUD amendment under these circumstances it would cause a violation of the REA and the other Governing Contracts applicable to the Center. SOF, ¶ 56, 58.

      The development applications at issue sought additional exterior signs for the Major space for Dick's with Sears retaining its Major signage rights in direct violation of the REA and the other Governing Contracts. SOF, ¶ 56, 3. There is no dispute that Dick's is not a Major[6] (or a successor

---

[6] An Anchor Tenant in the PUD is defined slightly different than a Major Tenant in the REA. SOF, ¶ 5. Modifying the PUD to allow Dick's to have Anchor Tenant rights would not relieve Dick's, Sears, or Transform of their obligation to obtain the contractual rights of all signatories to the REA to allow a space tenant such as Dick's to have exterior signage rights at the Gardens Mall and modify the sign and entrance way requirements. SOF, ¶ 16.

or assign of a Major) as defined in the REA,[7] and is not entitled to the signage rights provided for Majors under the REA. SOF, ¶¶ 11-12.[8] Forbes cannot unilaterally grant non-Major tenants exterior signage rights at the Center available only to Majors in violation of the REA and other Governing Contracts. SOF, ¶ 16. All the signatories to the REA, including the other Majors, would need to consent to a modification to the REA to grant the exterior signage rights sought by Dick's in this case. *Id.* The signage rights are provided for in the Governing Contracts and designed to maintain uniformity so that the Gardens Mall operates as a first-class shopping center in accordance with the Governing Contracts. SOF, ¶ 28. There are no independent acts of interference taken by Gardens Venture, and Forbes is the only party charged with enforcing the REA and the other Governing Contracts to maintain the Gardens Mall as a first-class shopping center. SOF, ¶ 17.

Forbes had an absolute right to enforce the terms of the REA regarding the Major signage rights sought in connection with the Dick's Sublease. Even if Defendants acted with malice in enforcing its contractual rights, which Defendants deny, the only relevant question is whether Defendants acted with improper means in enforcing those contractual rights. Malice is not relevant to the enforcement of Defendants' contractual rights. The only improper means alleged took place prior to 2018 (*i.e.*, working with the City to amend the PUD in connection with Resolution 20, 2012), and since 2018, Defendants merely enforced their contractual rights under the Governing Contracts (*i.e.*, refusing to sign the development applications, which violated the REA). The REA expressly provides that Forbes has certain "Operating Covenants," including to operate or cause to be operated the Gardens Mall "in accordance with the provisions of this REA as a complex of retail stores and service enterprises that are a part of a first-class regional shopping center with a two-level enclosed mall" and expressly grants all parties, including Forbes and all Majors an absolute right to withhold consent from a tenant other than a Major to have exterior signage. SOF,

---

[7] As set forth *infra*, in the 2014 Case, Sears sought to declare that Sears had a right to sublease only the top floor of the Sear's Building and that Dick's could be declared a Major tenant only for the purpose of signage. SOF, ¶ 34. The Fourth District Court of Appeals ruled Sears was entitled to sublease a portion of the Sears Building to Dick's as a space tenant, and as to whether Dick's could be considered a Major under the REA, ruled "[t]he remaining issues are without merit and we affirm without comment." SOF, ¶ 35. On remand, the trial court entered a Final Judgement of declaratory relief in Sears's favor, but "only to the extent and subject to the limitations in the Fourth District Opinion." The issue of whether Dick's is a Major for the purposes of signage rights under the REA is *res judicata*. SOF, ¶ 37.

[8] Had Sears assigned all of its rights to Dick's, Forbes could recapture the space and such an assignment would violate the Settlement Agreement allowing the assignment of the Forbes/Sears sublease to Transform in the Sears Bankruptcy. *See* SOF, ¶¶ 25, 45.

¶ 17. Forbes, for the benefit of all tenants, is bound by its contractual obligations to operate as a first-class shopping center at the Gardens Mall and to ensure operations at the Gardens Mall are otherwise in conformance with the REA and the other Governing Contracts, and to maintain a diversified and well-balanced tenant mix. SOF, ¶ 17, 28. Every iteration of the Dick's Sublease and the "Fifth Amendment" recognized all of the restrictions and requirements of the Governing Contracts. SOF, ¶¶ 23-24, 48.

Forbes never opposed the sub-subleasing of a portion of Sears' lease premises on the second floor of the Sears store at the Gardens Mall, subject to the REA. SOF, ¶ 37. Transform never assigned all of the Major tenant rights to Dick's nor could it without an amendment to the REA. SOF, ¶ 49, 16.[9] Forbes had every right to enforce the REA in the absence of an effective assignment of Major tenant rights from Transform to Dick's. Indeed, Transform could not assign all of its rights as a tenant, including its Major tenant rights, without triggering Forbes' right to recapture the space Sears was operating in and without violating the Settlement Agreement. SOF, ¶ 25. Accordingly, Transform only subleased a portion of its rights to Dick's. SOF, ¶ 26. Defendants' alleged conduct is not actionable. All of Forbes' actions were taken to safeguard Defendants' contractual interests under the REA and other Governing Contracts and were not taken by improper means. There was no intentional or unjustified interference.[10]

### III. Standard of Review

In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995), citing *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986). Because this is a diversity case, Florida's substantive law governs. *See KMS Restaurant Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004) citing *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002).

Here, Defendants seek summary judgment as to Dick's claims in its Complaint for tortious interference with a contractual relationship and tortious interference with a business relationship.

---

[9] When Nordstrom was assigned Burdines' Major tenant rights, an amendment to the REA was required and entered into by the parties to the REA. SOF, ¶ 19. This Second Amendment to the REA also allowed for the 90,000 square foot extension of Macy's which included the Macy's Furniture store and approved the Macy's Furniture store expansion and exterior elevations, which included Macy's Furniture store exterior signage. SOF, ¶ 20.

[10] The only conduct which could possibly rise to the level of meeting the standard of improper means was Resolution 20, 2012 which was found to be unconstitutional.

### III. Summary Judgment is Warranted

#### A. Dick's cannot establish the basic elements of a claim for tortious interference.

A claim for tortious interference with a business relationship requires "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *See Hamilton v. Suntrust Mortg.*, 6 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014), citing *Univ. of West Fla. Bd. of Trs. v. Habegger*, 125 So. 3d 323, 326 (Fla. 1st DCA 2013). Claims of tortious interference with a contract and of tortious interference with a business relationship are essentially one and the same. *Pilkington v. United Airlines, Inc.*, 921 F.Supp. 740, 749 (M.D. Fla. 1996). The only practical difference is that in the former there is a contract and, in the latter, only a business relationship. *Id.* at 749. As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). There is no genuine issue of material fact; Dick's cannot establish the essential elements of either count.

#### 1. Defendants are not strangers to the business relationship or contract between Dick's and Sears.

It is undisputed that Defendants are not strangers to the relationship between Dick's and Sears or Dick's and Transform. SOF, ¶ 62. On February 27, 2020, Defendants filed a Motion to Dismiss (ECF No. 17). While denying the Motion to Dismiss, the Court found that there was ***no[] dispute that Defendants were not strangers to the relationship between Plaintiff and Sears*.*" SOF, ¶ 62. One of the indispensable elements of a claim for tortious interference is that "…***the interfering defendant must be*** a third party, ***a stranger to the business relationship***." *Salit v. Ruden*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (emphasis added). *McCurdy v. Collis*, 508 So. 2d 380 (Fla. 1st DCA 1987) ("[T]here is no cause of action for tortious interference when a contract provision expressly reserved the right to interfere."); *see also* Compl., Ex. 13, p. 52 & Ex. E thereto. Dismissal of claims of tortious interference are required, where, as here, the defendant is not a stranger to the business relationship. *Skytruck Co. LLC v. Sikorsky Aircraft Corp.*, 501 F.

App'x 879, 880 (11th Cir. 2012) (affirming summary judgment because defendants were not strangers to the contract).

Forbes is the landlord for Gardens Mall. SOF, ¶ 27. The Dick's Sublease was expressly subject to the Governing Contracts, and Forbes has a direct beneficial or economic interest in the Forbes/Sears Sublease and in any potential business relationship or contract whereby Dick's would become the sub-subtenant of a portion of the Sears store at the Center. SOF, ¶¶ 23-24. Any agreement providing for the use of the Sears store, including the Dick's Sublease, is subject to the Governing Contracts to which Forbes is a party, and Forbes has the authority to manage the Gardens Mall and enforce those contractual rights. SOF, ¶ 1. Specifically, the Dick's Sublease unambiguously provides that:

- "Tenant acknowledges that Landlord's interest in Landlord's Parcel derives from [the Forbes/Sears Sublease]" (*See* Compl., Ex. 17, p. 10);

- The Forbes/Sears Sublease and Supplemental Agreement, which are jointly defined in the Dick's Sublease as the "Master Lease," are incorporated by reference into the Dick's Sublease (*Id.*, p. 10);

- "[Dick's] takes and leases the Demised Premises expressly subject to and subordinate to the provisions of the Master Lease"[11] (*Id.*, p. 10);

- The REA is incorporated by reference into the Dick's Sublease (*Id.*, p. 10); and

- "Subject to the REA and Master Lease, Tenant [Dick's] shall use and occupy the Demised Premises during the continuance of this Lease..." (*Id.*, p. 27).

SOF, ¶ 2.

Forbes is also a party to the Settlement Agreement entered into with Transform in connection with the Sears Bankruptcy, which provides conditions and restrictions on the use of the Sears premises, including that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[11] Based upon the unambiguous terms of the agreement, Dick's was on express notice of the subordinate position of Sears under the Forbes/Sears Sublease, of the REA expressly preventing the type of signage rights Dick's was seeking, and the other incorporated documents. SOF, ¶ 24.

SOF, ¶ 45.

Consistent with the express terms of the rejected Dick's Sublease, "a sublease rises and falls with the master lease, and that a sublessee can take no greater rights in demised property than its sublessor." *Thal v. S.G.D. Corp.*, 625 So. 2d 852, 853 (Fla. 3d DCA 1993). Here, a sub-sublease by Dick's would be entirely dependent upon and directly linked to the Governing Contracts to which Forbes is a party. SOF, ¶ 1. Sears could not operate in the space with its signage as a Major under the REA and simultaneously allocate Major signage rights to its non-Major tenant Dick's without directly violating the REA and the Governing Contracts. SOF, ¶ 15. Dick's conceded these facts but claims that notwithstanding that it is not a Major under the REA and that it took with knowledge that the Governing Contracts would not permit the exterior signage it desired or required, Forbes acted maliciously or by improper means in not cooperating with Sears and then subsequently Transform, to obtain those rights. Forbes has an absolute right to enforce the REA, irrespective of any malice, subject to the narrow exception that it could not enforce those rights by improper means. Dick's as a matter of law cannot satisfy the narrow exception to the right of the contracting party to enforce its contract rights.

> **2. Forbes cannot maliciously interfere with Dick's relationship with Sears or its successors when enforcing its legal and contractual rights.**

This Court recognized the applicable law that, in general, only defendants who are a stranger to the alleged transaction may be liable for tortious interference, and went on to summarize the following narrow exception where a defendant acted with malice:

> The privilege is qualified by the obligation to proceed in good faith and is a valid defense only where the interference was not for an improper purpose. This good faith requirement . . . disqualifies litigants from asserting the privilege when they have acted with malicious or conspiratorial motives.' [*Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001)]; *see also Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014).

*See* SOF, ¶ 62 & ECF No. 32, at p. 5-6.

Malice is not relevant to the enforcement of contractual rights and the exception described the by Court in the Motion to Dismiss – enforcement of one's contractual rights by improper means – is not applicable in this case.

In this instance, the Project Narratives set forth in the 2018 and 2019 Development Applications were per se violation of the REA as it relates to the Major signage rights sought for

11

Dick's under the Dick's Sublease. SOF, ¶ 56. Withholding consent to the 2018 and 2019 Development Applications was based upon the enforcement of express provisions of the REA and the other Governing Contracts and cannot in any event be deemed arbitrary, capricious, or malicious. *See Fla. Tel. Corp.,*, 468 So. 2d at 545. Importantly, however, consent by Forbes under the REA is not sufficient to provide Dick's with the exterior signage rights sought under the Dick's Sublease as all of the signatories and Majors would need to approve exterior signage for a tenant who is not a Major or Forbes would be subject to being deemed in breach of the REA by one of its other signatories. SOF, ¶ 19. Any argument that there were instances in the past where exterior signage rights have been granted to non-Major tenants cannot stand because the REA expressly contains a waiver clause that provides that past consents are not binding and "the consent or approval by a Party to or of any act or request by another Party requiring consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar acts or requests." *See* SOF, ¶ 18;[12] *see also Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519 (Fla. 4th DCA 1991) (reversing the trial court's denial and granting Plaintiff summary judgment on the affirmative defenses of waiver and estoppel based on an unambiguous written modification and anti-waiver clause).[13] Whether or not Defendants harbored personal malice or ill-will towards Dick's is irrelevant to Defendants' enforcement of their contractual rights under

---

[12] In addition, the REA also provides for certain exterior signage rights for restaurants. SOF, ¶ 13. The integrity of the exterior signage provisions of the REA was maintained by Forbes other than the Macy's Furniture exterior sign permitted in connection with the 90,000 square foot addition pursuant to the Second Amendment to the REA consented to by all parties to the REA. SOF, ¶ 20. The vast majority of all exterior signs except exterior signs of Major tenants were restaurant signs permitted by the REA.

[13] The *Rybovich* anti-waiver clause stated:

> Except as otherwise expressly provided herein, no waiver of any rights or obligations hereunder shall be deemed to have occurred unless in writing signed by the party against whom such waiver is asserted and no waiver shall be deemed a waiver of any other or subsequent right or obligation....

*Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519, 521–22 (Fla. 4th DCA 1991).

In comparison, Section 24.4 of the REA states:

> No express written waiver of any default shall affect any default or cover any period of time other than the default and period of time specified in such express waiver. One or more written waivers of any default in the performance of any provision of this REA shall not be deemed to be a waiver of any subsequent default in the performance of the same provision or any other term or provision contained herein. The consent or approval by a Party to or of any act or request by another Party requiring consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar acts or requests…

the REA and other Governing Contracts. A party cannot maliciously enforce its rights under a contract. The only relevant question is whether the party enforced those contractual rights by improper means.

*Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) is instructive. There, the Third District Court of Appeals reversed a judgment entered in favor of the plaintiff for malicious interference with a contract and business relationship holding that "so long as improper means are not employed, ***activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable***." *Id*. at 1225. The court explained that "it is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will towards the plaintiff." *Id*.; *McCurdy v. Collis*, 508 So. 2d 380 (Fla. 1st DCA 1987) ("[T]here is no cause of action for tortious interference when a contract provision expressly reserved the right to interfere."); *Chipley v. Atkinson*, 23 Fla. 206, 1 So. 934, 938 (Fla.1887) ("Where one does an act which is legal in itself, and violates no right of another person, it is true that the fact that the act is done from malice, or other bad motive towards another, does not give the latter a right of action against the former."). Forbes had the privilege to enforce its contractual rights and discharge it obligations under the REA, the Forbes/Sears Sublease, and the other Governing Contracts and it is irrelevant whether Defendants may have harbored some "personal malice or ill-will" while doing so.[14] It is undisputed that Forbes has never denied Dick's, nor any prior subtenant of Sears, its rights to sublease the Sears store. SOF, ¶ 16. Dick's did not have Major rights and did not have any right to exterior signage at the Gardens Mall. SOF, ¶ 11. Forbes has an absolute privilege to exercise its contractual rights and discharge its obligations in its sole discretion (as can the other parties to the REA, including Sears) and Dick's cannot second guess Forbes' enforcement of its contractual REA rights under the guise of "malice," nor can it ask the Court to do so.

---

[14] To the extent Dick's argues that Forbes was discriminatory in its enforcement of the REA, Section 15.6 of the REA provides that, "[i]n the operation and management of the Shopping Center Parcel, and each part thereof, including, without limitation, the Common Area and Common Utility Facilities, and in all other respects in which work or services are performed or materials or equipment supplied to or for any Occupant, Developer will accord treatment to each Major with respect to its Parcel and Improvements of the respective kind as favorable as that accorded to the other Majors and to the Occupants of the Mall Store Buildings…" and is inapplicable here because it relates to the operation and management of the Center, not Forbes' enforcement of its contractual rights under the REA and the other Governing Contracts. SOF, ¶1; *see also* Compl. Ex. 13, at §15.6

### 3. Dick's is not a Major as a matter of law.

In 2014, Sears filed suit against Forbes seeking declaratory relief and an injunction declaring that Sears had a right to sublease only the top floor of the Sear's Building and that Dick's could be declared a Major ("2014 Case"). SOF, ¶ 34. The Fourth District Court of Appeal noted that Forbes did not dispute Sears's right to sublease a portion of the Sears store subject to the REA, and ruled that Sears was entitled to sublease a portion of the Sears Building to Dick's as a space tenant. SOF, ¶ 36. As to the issue of whether Dick's could be considered a Major under the REA, the court ruled "[t]he remaining issues are without merit and we affirm without comment." *Id*. On remand, the trial court amended the Final Judgment entering declaratory relief in Sear's favor, but "only to the extent and subject to the limitations in the Fourth District Opinion." SOF ¶ 38. This determination cannot be collaterally attacked now in this lawsuit.

Certainly, Sears had the right to sublease to Dick's and retain its Major tenant signage rights while granting Dick's interior signage rights consistent with that of a space lessee such as Land's End, but it could not grant Dick's its Major tenant signage rights while also retaining those Major tenant signage rights. SOF, ¶¶ 15-16. Dick's has no standing to declare itself a Major under the REA, and given the ruling of the Fourth District Court of Appeal, as between Forbes and Sears, Transform, and Dick's the matter is *res judicata*. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) ("The general principle of *res judicata* prevents the relitigation of issues and claims already decided by a competent court."); *Chevaldina v. Katz*, No. 17-22225-CIV, 2018 WL 10517555 at *7 (S.D. Fla. Feb. 21, 2018) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.") (citation omitted). Dick's even admits that it was Sears' or Transform's responsibility to obtain the necessary approvals for Dick's to obtain Major tenant signage rights. *See* SOF, ¶48; Deposition Transcript of Vincent Corno as Dick's 30(b)(6) representative, August 24, 2023, 193:11-20 (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████) Sears could not grant Major signage rights without assigning all of its rights as a Major to Dick's and obtaining the approval of the other Major tenants. SOF, ¶ 15, 19. Sears could not assign its Major tenant rights to Dick's without

14

triggering Forbes' lease recapture rights. SOF, ¶ 25. Transform never became a party to the REA and it had no Major tenant sign rights under the REA to convey to Dick's. SOF, ¶ 49. As a matter of law, Dick's is now legally precluded from becoming a Major because this issue was decided by the Fourth District Court of Appeals in connection with the 2014 Case and is *res judicata*.

### 4. Forbes could not tortiously interfere with the Dick's Sublease, which Sears rejected in the Sears Bankruptcy.

When Sears filed for Bankruptcy in October of 2018, the Forbes/Sears Sublease and the Dick's Sublease were both executory contracts, subject to being assumed and assigned or rejected by Sears, the debtor, pursuant to applicable law. SOF, ¶ 4. Transform acquired certain assets from Sears in connection with the Bankruptcy, including the assignment of the Forbes/Sears Sublease. SOF, ¶ 40. While Sears assumed and assigned the Forbes/Sears Sublease to Transform, the Dick's Sublease was never assumed and assigned and it remained in the Sears Bankruptcy. SOF, ¶ 42. Sears had every right to assume and assign the Dick's Sublease and it chose not to do so. SOF, ¶ 41. Whatever rights Dick's had with Sears to sublease a portion of the Sears at the Center was terminated by the Sears Bankruptcy as a matter of law – *not* Forbes. *See id*. Only Sears could terminate, modify or amend the Dick's Sublease through October 15, 2019, not Transform. SOF, ¶ 44. Sears chose not to assume and assign the Dick's Sublease in the Sears Bankruptcy and Dick's chose to take no action in the Sears Bankruptcy to preserve the Dick's Sublease. *Id*. As a matter of law, Defendants did not cause the termination of the Dick's Sublease.

The "Fifth Amendment" is not a standalone agreement. SOF, ¶ 47. It purports to be a "Fifth Amendment" to an agreement entered into by and between Sears and Dick's (the 2015 Dick's Sublease as amended), which was entered into during the Sears Bankruptcy before the Dick's Sublease was rejected, was not executed by Sears, does not incorporate by reference the terms of the Dick's Sublease, and does not otherwise contain the necessary material terms of a lease. After Sears rejected the Dick's Sublease, Transform could have entered into a new agreement with respect to the Sears store in accordance with its rights under the Forbes/Sears Sublease, however the "Fifth Amendment" does not contain all of the terms material to a lease of real property and therefore did not create a valid, binding agreement with which Defendants could interfere. *See Waveblast Watersports II Inc. v. UH-pompano, LLC*, 291 So.3d 657, 660 (Fla. 4th DCA 2020); *see also BGT Group, Inc. v. Tradewinds Engine Services, LLC*, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011). And although The "Fifth Amendment" might evidence a business relationship

15

between Transform and Dick's, that relationship only began in June of 2019. SOF, ¶ 47. The only actions Forbes took after 2019 was to refuse to sign development applications allowing Dick's Major tenant rights under the REA. Forbes had every right to enforce the REA, especially given that as between Sears/Transform and Forbes, it was *res judicata* that Dick's was not a Major.

> 5. **Defendants did not act with improper means in enforcing their rights under the Governing Contracts and any action by improper means which may have occurred is barred by the statute of limitations.**

In addition, Defendants did not act with improper means, which is the sole exception recognized to the privilege of enforcing one's contractual rights as a defense for a defendant charged with tortious interference. In response an interrogatory which asked what the Defendants did to act with malice or improper means, Dick's gave a narrative response that, while wordy, in substance is based on only three things: (a) Defendants not signing development applications to amend the Gardens PUD; (b) alleged activity in 2011 (9 years before Dick's filed this lawsuit) in connection with the City's passage of a resolution by the City (which was passed almost 3 years prior to the execution of the Dick's Sublease); and (c) an incomplete deposition excerpt, which is hearsay, provided out of context, made by a representative of Forbes. *See* SOF, ¶ 51 and Ex. S thereto at Request No. 9.

The exception to the requirement to show purely malicious intent is that "even where the defendant's motive is not purely malicious, a tortious interference claim may succeed ***if improper methods were used.***" *KMS Restaurant Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) (emphasis added); *Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2d DCA 1995) (holding that "alleged the use of threats, intimidation and conspiratorial conduct" constituted "improper methods").

Dick's cannot satisfy this standard. Here, there is no dispute that Forbes was enforcing its rights under the Governing Contracts and there are no improper means alleged, which would support Dick's claim for tortious interference. There is no evidence of threats, intimidation, and conspiratorial conduct directed at Dick's by Forbes. Even if the actions taken by Defendants with respect to the Resolution 20, 2012 were improper, they were taken in or before 2012, prior to any business or contractual relationship with Dick's being established and were taken in response to Sears's attempts to use the second floor of the Sears store for a mini-mall or mall extension in competition with the Center, not in response to any attempt to sublease to Dick's. SOF, ¶¶ 29-31. Dick's did not even execute a non-binding letter of intent until 2014 and did not execute the

16

conditional Dick's Sublease until 2015. *See* SOF, ¶ 32. Simply put, Resolution 20, 2012 is related to Sears' efforts to market their space to create a mini-mall (not to sublease to Dick's), it was passed before Dick's expressed interest in the Gardens Mall, and it was never applied to any application to create a Dick's store at the Gardens Mall. Dick's own Rule 30(b)(6) corporate representative testified that the improper conduct allegedly taken by Defendants was their "engineering pretextual and illusory objections to rudimentary, ordinary course amendments to the PUD, and surreptitious dealings with the city" and admits that Forbes did not do anything unlawful in its enforcement of its contractual rights. *See* Deposition Transcript of Vincent Corno as Dick's 30(b)(6) representative, August 24, 2023, 175:8-175:11; 110:13-15 (Q. I just want to be clear whether you are accusing the city and Forbes of illegal conduct. A. **I'm not accusing anyone of illegal conduct**.). Based upon the undisputed facts, Defendants did not act with improper means, the exception to the application of the privilege of enforcing contractual rights is inapplicable, and Dick's cannot sustain its claims for tortious interference based on Resolution 20, 2012.

Additionally, any improper means that Dick's claims to have occurred regarding the passing of Resolution 20, 2012, although temporally and factually irrelevant as set forth above, occurred more than four (4) years before the filing of this lawsuit, barring these acts as a basis for a claim for tortious interference pursuant to the improper means exception to the privilege of enforcing contractual rights. *See* 95.11(3)(o), Fla. Stat. (2019). The Dick's Sublease was also a transaction with Sears that occurred well before the Sear's Bankruptcy, was never assumed or assigned by the debtor, and thus, any improper means being alleged by Dick's must have occurred after 2019 and only could have occurred with respect to whatever contractual rights or business relationship Dick's purportedly had based upon a "Fifth Amendment" to the Dick's Sublease. SOF, ¶¶ 4, 47. Refusing in 2018 or 2019 to sign the Development Application which violated the REA is not a basis for a claim for tortious interference based on Defendants use of improper means in Defendants' otherwise legitimate enforcement of their contractual rights under the REA. There were no improper means used by Defendants upon which Plaintiff can rely for its claims for tortious interference against Defendants.

## IV.    Request for Hearing

Defendants request a hearing on this motion. Given the complexity of the various agreements, and the dispositive relief sought herein, Defendants submit that it would assist the Court to conduct a hearing, which Defendants estimate would take no more than 90-minutes.

V.  **Conclusion and Requested Relief**

For all the foregoing reasons, Defendants respectfully request this Court enter Summary Judgment in their favor as to the Complaint filed by Dick's and grant any and all other relief this Honorable Court deems just and proper.

Dated: May 21, 2024

                                          Respectfully submitted,

**BERGER SINGERMAN LLP**
*Counsel for Defendants*
201 East Las Olas Blvd. Suite 1500
Ft. Lauderdale, Florida 33301
Telephone: (954) 525-9900
Fax: (954) 523-2872

By: */s/ Mitchell W. Berger*
Mitchell W. Berger
Florida Bar No. 311340
mberger@bergersingerman.com
drt@bergersingerman.com
sprince@bergersingerman.com
Nicole Levy Kushner
Florida Bar No. 106995
nkushner@bergersingerman.com
mavin@bergersingerman.com
drt@bergersingerman.com


**CRITTON, LUTTIER & COLEMAN, LLP**
*Co-Counsel for Defendants*
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
(561) 842-2820 – Ph
(561) 844-6929 – Fx
gcoleman@lawclc.com
sdigangi@lawclc.com
cwoodward@lawclc.com
By: */s/ Gregory W. Coleman*
**Gregory W. Coleman**
Florida Bar No: 846831

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 21st day of May 2024, by electronic transmission through the Court's CM/ECF system upon all parties authorized to receive electronic notice in this case.

By: /s/ Mitchell W. Berger
  Mitchell W. Berger