**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-80157-CIV-REINHART**

DICK'S SPORTING GOODS, INC.,

        Plaintiff,

v.

FORBES/COHEN FLORIDA PROPERTIES, L.P.,
and THE GARDENS VENTURE LLC,

        Defendants.

_____/

**PLAINTIFF DICK'S SPORTING GOODS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 3

I.  There is no genuine issue of material fact as to the first two elements of tortious interference ................................................................................................... 4

   A.  DSG Had Business Relationships with Sears and Transform. ............................... 4

   B.  Defendants Knew of DSG's Business Relationship with Sears and Transform. ............................................................................................................... 5

II. Defendants used improper methods to intentionally and unjustifiably interfere with DSG's business relationship. ...................................................................... 7

   A.  There Is No Genuine Dispute that Defendants Interfered with DSG's Business Relationship. ............................................................................................. 7

   B.  No Reasonable Juror Could Find that Defendants Employed Means that Are Not Improper. .................................................................................................... 8

       1.  Defendants' Justification for Refusing to Sign the Development Applications Was That DSG Could Not Have Signage Rights .................. 8

       2.  Defendants Knew Their Justification for Refusing to Sign the Development Applications Was False ........................................................ 10

       3.  Defendants' Use of a Known False Justification to Deprive DSG of its Contractual and Business Relationships Constitutes "Improper Means" Under Florida Law ......................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)...................................................................................................................3

*Baker v. Upson Reg'l Med. Ctr.*,
 94 F.4th 1312 (11th Cir. 2024) ...................................................................................................3

*Carl v. Republic Sec. Bank*,
 282 F.Supp. 2d 1358 (S.D. Fla. 2003) ........................................................................................3

*Ins. Field Servs., Inc. v. White & White Inspection & Audit Services, Inc.*,
 384 So. 2d 303 (Fla. 5th DCA 1980) ..........................................................................................8

*KMS Rest. Corp. v. Wendy's Int'l, Inc.*,
 361 F.3d 1321 (11th Cir. 2004) ................................................................................................13

*Kordash v. United States*,
 51 F.4th 1289 (11th Cir. 2022) ...........................................................................................11, 12

*Making Ends Meet, Inc. v. Cusick¸* 719
 So.2d 926 (Fla. 3d DCA 1998) .................................................................................................13

*McCurdy v. Collis*,
 508 So. 2d 380 (Fla. Dist. Ct. App. 1987) .....................................................................8, 13, 14

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
 702 F.3d 1312 (11th Cir. 2012) ................................................................................................12

*Nizzo v. Amoco Oil Co.*,
 333 So. 2d 491 (Fla. 3d DCA 1976) .........................................................................................13

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
 277 F.R.D. 676 (S.D. Fla. 2012)...............................................................................................10

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
 742 So. 2d 381 (Fla. 4th DCA 1999) ......................................................................................4, 7

*Tamiami Trail Tours, Inc. v. Cotton*,
 463 So. 2d 1126 (Fla. 1985).......................................................................................................3

*Wackenhut Corp. v. Maimone*,
 389 So. 2d 656 (Fla. 4th Dist. Ct. App. 1980) ............................................................................4

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**Statutes**

R.E.A....................................................................................................................................12

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................3

## INTRODUCTION

Since at least 2012, Dick's Sporting Goods ("DSG") has sought a store at The Gardens Mall.[1] And beginning no later than 2014, DSG and Sears had a business relationship and then a contract relating to a sublease of the second floor of the Sears store at The Gardens. But DSG's ability to open that store was frustrated by the years-long campaign by The Gardens Venture LLC and Forbes/Cohen Florida Properties, L.P. (collectively, the "Defendants")—the mall owner and operator, respectively—to interfere with DSG and Sears' business and contractual relationships.

DSG and Sears have long maintained that Defendants' interference was unjustified. First, Defendants colluded with the City to pass a resolution, without notice to Sears or any other anchor tenant, which purported to grant Defendants approval rights over any subdivision of the Sears building. Sears sued Forbes (and the City) in Florida state court, and won. In that July 12, 2017 ruling, the Fourth District Court of Appeals declared, among other things, that Sears had the right to sublease its second-floor space to DSG. Crucially, the Fourth DCA also found that Sears' right to sublease to DSG necessarily included DSG's ability to install signs on the exterior of the Sears building. Indeed, the Fourth DCA said: "***Sears has the right to grant Dick's signage rights that Sears has under the Forbes-Sears sublease and the R.E.A.***"

DSG thought that the Fourth DCA's ruling would be the last word on that issue, and that Defendants would cease interfering with DSG and Sears' efforts to effectuate their sublease. Instead, Defendants identified new ways to interfere with DSG and Sears' relationship. For example, between November 2017 and February 2018, Defendants sought to use their influence over JPRA, an architecture firm that has a long-standing relationship with Defendants, to prevent

---

[1] Capitalized terms not otherwise defined have the meaning set forth in DSG's Statement of Undisputed Facts ("SUF"), filed contemporaneously with this motion.

JPRA from "approving" building elevations proposed by DSG and Sears that would allow DSG to have exterior signage on the Sears building. Then, after DSG and Sears worked for months to revise and finalize plans to effectuate their sublease, Defendants repeatedly refused to sign certain ministerial forms on the Development Applications required by the City, preventing DSG from effectuating the sublease. While Defendants' entire course of conduct is relevant to DSG's claim, it is Defendants' unjustified refusal to sign the Development Applications that forms the basis of this motion.

For years, DSG and Sears pressed Defendants for a straight answer for why Defendants would not execute those forms. But Defendants refused to provide a straight answer until DSG noticed a Rule 30(b)(6) deposition on the topic, after four years of litigation. When asked under oath, Defendants stated that the reason they refused to sign those Development Applications was ***the same reason*** they offered and the Fourth District Court of Appeals had already rejected in the prior lawsuit: "***Dick's was a sublease of Sears; therefore, [it] was not entitled to an exterior sign***."

Because this justification had been rejected in a binding judgment against Defendants before Defendants refused to sign the Development Applications, Defendants' reliance on it to interfere with DSG's relationships was unjustified and improper. The other elements establishing liability for a tortious interference claim—the existence of a relationship and the defendant's knowledge of that relationship—are not in dispute.[2] No reasonable jury could find that Defendants' reliance on an invalid legal reason for interfering with DSG's relationship is a "proper method" for interfering, such that a limited privilege to interfere applies. This Court should therefore find that Defendants' interference was unjustified and improper as a matter of law.

---

[2] DSG moves for summary judgment as to liability only. DSG will establish its entitlement to damages—both compensatory and punitive—at trial.

2

## STATEMENT OF FACTS

DSG respectfully incorporates its statement of undisputed facts ("SUF") filed contemporaneously with this motion.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, the Court "must view the evidence presented through the prism of the substantive evidentiary burden." *Id*. at 254. To prevail, "the moving party must demonstrate that, on all the essential elements on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024). Upon making that showing, the moving party "is entitled to summary judgment unless the nonmoving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issues of fact." *Id*. (internal quotations omitted).

## ARGUMENT

The undisputed facts establish that no reasonable jury could find that Defendants are not liable to DSG for tortious interference. DSG's claims, which are plead in the alternative, each have four elements:[3]

---

[3] DSG's Complaint contains two tortious interference counts: (a) tortious interference with a contract, and (b) tortious interference with a business relationship. These two claims have the same four elements, except that tortious interference with business relationship requires a business relationship, which is not necessarily a contractual relationship. *See Carl v. Republic Sec. Bank,* 282 F.Supp. 2d 1358, 1371–72 (S.D. Fla. 2003); *see also Tamiami Trail Tours, Inc. v. Cotton,* 463 So. 2d 1126, 1127 (Fla. 1985) (elements of tortious interference with a business

3

1. The existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights;

2. The defendant's knowledge of the relationship;

3. An intentional and unjustified interference with the relationship by the defendant; and

4. Damage to the plaintiff as a result of the interference.

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999). The first two elements are not meaningfully disputed in this case, and the amount of damages will be established at trial. DSG is entitled to judgment as a matter of law as to the third element, because no reasonable jury could find that Defendants did not intentionally and unjustifiably interfere with DSG's business relationship.

## I. THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE FIRST TWO ELEMENTS OF TORTIOUS INTERFERENCE.

### A. DSG Had Business Relationships with Sears and Transform.

DSG and Sears began discussions on a potential sublease for the second floor of the Sears building no later than June 2012. SUF ¶ 25. On May 7, 2014, DSG and Sears executed a Letter of Intent ("LOI") to sublet the second floor of the Sears building at The Gardens. SUF ¶ 30. On February 20, 2015, DSG and Sears executed the Sublease itself. SUF ¶ 31. That Sublease was amended four times between February 2016 and November 2018 to extend certain deadlines and accommodate the parties' efforts to effectuate the Sublease (notwithstanding Defendants' multi-year campaign of interference). SUF ¶¶ 39, 53, 63, and 69. On June 27, 2019, the Sublease was amended a fifth and final time, to make Transform, who had assumed Sears's interest in the Sears store at The Gardens, the counterparty to DSG, and to yet again extend certain deadlines. SUF ¶

---

relationship); *Wackenhut Corp. v. Maimone,* 389 So. 2d 656, 657 (Fla. 4th Dist. Ct. App. 1980) (elements of tortious interference with a contractual relationship).

4

74. The Sublease remained in force until it was terminated on December 20, 2019. SUF ¶ 82. These undisputed facts establish a business relationship between DSG and Sears beginning no later than May 7, 2014, and between DSG and Transform beginning no later than June 27, 2019.

### B. Defendants Knew of DSG's Business Relationship with Sears and Transform.

The undisputed facts also establish that Defendants knew of DSG's business relationship when they interfered with that relationship. Sidney Forbes met with Alan Shaw of Sears and a DSG executive in the spring of 2014. SUF ¶ 28. During this meeting, Sears and DSG showed Sidney Forbes renderings of proposed modifications to the Sears building at the Gardens that would include a Dick's Sporting Goods. SUF ¶ 29. ███████████████████

███████ *Id*. After DSG and Sears executed the LOI, Sears sued Forbes on September 30, 2014, seeking a declaration that Sears had a contractual right to sublease the second floor of the Sears building to DSG. SUF ¶¶ 36-37. During that litigation, an executed version of the LOI and DSG-Sears Sublease were produced to Forbes. SUF ¶ 30-31.

On July 12, 2017, the Fourth DCA issued its ruling, and Sears won its litigation against Forbes. SUF ¶ 40. The Fourth DCA opinion is replete with references to DSG and Sears' relationship as it related to The Gardens. SUF ¶ 42. The next day, the City provided copies of proposed renderings for a Dick's Sporting Goods in the Sears building to Forbes. SUF ¶ 44. Defendants knew from that point on that—now that the Fourth DCA had resolved the issue of whether Sears could sublease to DSG—Sears and DSG were moving forward with their plans for a sublease at The Gardens.

Defendants followed DSG and Sears' relationship closely. On December 5, 2017, JPRA, the architect responsible for reviewing proposed changes to the Gardens Mall for architectural harmony, sent Defendants renderings of the Sears building's elevations, which depicted DSG

signage on the building. SUF ¶ 48. Defendants' employees and their counsel were intimately involved in reviewing those elevations and trying to invent ways for the architect to oppose them. SUF ¶ 49. Defendants also closely followed whether the City's concerns about DSG's hunting component were being addressed and were aware that DSG pledged in April 2018 not to have a hunting component at The Gardens. SUF ¶¶ 50-52.

After years of planning, on April 27, 2018, DSG (with Sears' approval) sent the "May 2018 Development Application" to the City, requesting an amendment to the PUD that would allow DSG and Sears to (a) display signage for both Sears and DSG on each of the Sears building's facades, and (b) move the existing entrance on the south elevation so that it would be centered. SUF ¶ 54. On May 4, 2018, the City issued a Memorandum of Insufficiency to DSG, stating that it would not review the May 2018 Development Application until it was signed by Defendants. SUF ¶ 55. Beginning as early as April 24, 2018 and then continuing through May and June, DSG was in contact with Defendants and requested The Gardens Venture's signature on the May 2018 Development Application so that DSG could effectuate its sublease. SUF ¶ 57. By letter dated June 5, 2018, Defendants' counsel informed DSG that Defendants would not sign the Development Application. SUF ¶ 58.

On August 21, 2018, DSG and Sears submitted a revised and narrowed Development Application to the City. SUF ¶ 62. The "August 2018 Development Application" did not seek to increase the number of signs on the Sears building and sought only one DSG sign on the entire building. SUF ¶ 61. The City again refused to review the Development Application unless Defendants first signed it. SUF ¶ 64.

On September 19, 2018, Sears (on its own and DSG's behalf) sent a letter to Defendants requesting that Defendants sign the August 2018 Development Application. SUF ¶ 65. Defendants again refused to do so. *Id*.

On November 20, 2019, after DSG and Transform executed the Fifth Amendment to the Sublease, Transform (on its own and DSG's behalf) again requested Defendants' signature on a third Development Application, which sought the same, narrowed modifications to the Sears building as the second Development Application (the "November 2019 Development Application"). SUF ¶ 76. Defendants responded by suing Transform. SUF ¶ 79.

These undisputed facts establish that Defendants had knowledge of DSG's business relationship with Sears no later than the spring of 2014, and that Defendants had knowledge of DSG's business relationship with Transform no later than November 20, 2019. SUF ¶ 76.[4]

## II. DEFENDANTS USED IMPROPER METHODS TO INTENTIONALLY AND UNJUSTIFIABLY INTERFERE WITH DSG'S BUSINESS RELATIONSHIP.

### A. There Is No Genuine Dispute that Defendants Interfered with DSG's Business Relationship.

The third element of DSG's tortious interference claims is Defendants' "intentional and unjustified interference" with DSG's business relationship. *Salit*, 742 So. 2d at 385–86. It is undisputed that Defendants refused to sign the Development Applications that DSG, along with Sears and Transform, submitted to Defendants. SUF ¶¶ 58, 65, and 77. It is also undisputed that, as a result of Defendants' refusal to sign the Development Applications, DSG was unable to install signage at the Sears building. SUF ¶¶ 66, 82. Thus, there is no genuine dispute of material fact

---

[4] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ SUF ¶ 73.

that Defendants' refusal to sign the Development Applications interfered with DSG's business relationship with Sears and Transform.

### B. No Reasonable Juror Could Find that Defendants Employed Means that Are Not Improper.

Because Defendants had a financial interest in The Gardens, they were a not a "stranger" to the Sublease. Thus, Defendants had a "qualified privilege to interfere" with DSG's business relationship. *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. Dist. Ct. App. 1987). However, that "privilege carries with it the obligation to employ means that are not improper," which means:

> The justification for intentional interference "depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances among which the methods and means used and the relation of the parties are important."

*Id*. (quoting *Ins. Field Servs., Inc. v. White & White Inspection & Audit Services, Inc.,* 384 So. 2d 303, 306 (Fla. 5th DCA 1980)).

Here, no reasonable juror could find that Defendants used "means that are not improper" to interfere with DSG's business relationships because Defendants' reason for refusing to sign the Development Applications was a legal interpretation of the Forbes-Sears Sublease and the REA that Defendants ***knew*** was wrong.

#### 1. *Defendants' Justification for Refusing to Sign the Development Applications Was That DSG Could Not Have Signage Rights.*

On April 17, 2024, Nate Forbes testified as corporate representative for both Defendants. SUF ¶ 59 (N. Forbes Dep. Tr. at 16:22-25; N. Forbes Ex. 1 (30(b)(6) notice). In his capacity as a Rule 30(b)(6) representative, Mr. Forbes testified about: "Defendants' bases and reasons for deciding not to sign each of the May, August, and November Development Applications." SUF ¶ 59 (N. Forbes Ex. 1 (30(b)(6) notice at 5). ███████████████

████████████████████████████

8

██████ SUF ¶ 59 (N. Forbes Dep. Tr. at 124:9-10). ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ *Id.* at 230:13-24)[5] ██████

████████████████████████████████████████

██████████████

████████████████████████████████

████████████████████████

*Id.* at 232:14-19. ████████████████████████████

████████████████████████████ *Id.* at 234:2-13. ████████████████████████████

██████████████

████████████████████

████████████████████████████

████████████████████████████████

████

████████████████████████

████

*Id.* at 248:6-18; 250:7-251:18.

---

[5] All emphases added unless otherwise stated.

For years, Defendants refused to give a straight answer for why they refused to sign the Development Applications.  *See, e.g.,* SUF ¶¶ 58, 65, and 77.  ███████████████████████████████████████████████████████████████████████████████████████████████  SUF ¶ 65.  That testimony is binding on Defendants.  In response to a Rule 30(b)(6) deposition notice, "[a] corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).  The record is therefore undisputed that the Defendants' justification for not signing the Development Application—and thus interfering with DSG's business relationship—was Defendants' position that Sears could not give DSG exterior signage rights as part of a sublease.

        2.     ***Defendants Knew Their Justification for Refusing to Sign the Development Applications Was False.***

Crucially, Defendants knew that this justification was legally incorrect as of July 12, 2017—***ten months before*** they refused to sign the first Development Application.

This is not the first lawsuit relating to Defendants' improper conduct with regard to the Sears building and DSG Sublease.  Sears initiated litigation against Forbes in September 2014, and that lawsuit culminated in a decision, nearly three years later, from the Fourth District Court of Appeal on July 12, 2017.  In that lawsuit, Forbes contended that, "even if Sears does have subleasing rights, Dick's would have no right to install a sign as it is not permitted under the R.E.A. because Dick's is not a party to the R.E.A." SUF ¶ 38 (Fourth DCA Decision at 305).  Indeed, in Forbes' own words, it argued: "Dick's, as a proposed space sublessee is not a party to the REA, nor is Dick's a separate Mall store, and thus Dick's would have no right to any exterior signage." SUF ¶ 38 (Answer Brief of Forbes/Cohen Florida Properties at p. 7).  This is the exact same

argument Defendants are advancing in this Court as to why they refused to sign the Development Applications.

In its July 12, 2017 ruling, the Fourth DCA specifically ruled against Forbes on this issue. It held:

> The R.E.A does not expressly prohibit sublessees, such as Dick's, from installing signs. . . . [W]here a lease includes the right to sublease, the sublessor may grant any rights and privileges the sublessor has except where specifically prohibited. . . . **Consequently, Sears has the right to grant Dick's signage rights that Sears has under the Forbes-Sears sublease and the R.E.A.**

SUF ¶ 12. The Fourth DCA went further, reasoning:

> It would be *unreasonable* to conclude that both the Forbes-Sears sublease and R.E.A. expressly and unequivocally permit Sears to sublease to a retailer while at the same time *conclude that the R.E.A.'s signage criteria impliedly prohibits a retail sublessee, such as Dick's, from installing a sign*.

*Id*. Consequently, the Fourth DCA held that "Sears may grant its signage rights to Dick's as part of a sublease." *Id*. at 306 (n.3).

These holdings, which pre-dated DSG and Sears' earliest request that Defendants sign the Development Applications by ten months, are *directly* inconsistent with the Defendants' binding testimony ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ SUF ¶ 59 (N. Forbes Dep. Tr. at 230:13-24).

The Fourth DCA's ruling is binding on Defendants today and was binding on Defendants when they refused to sign the Development Applications in violation of those rulings. Collateral estoppel bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Kordash v. United States*, 51 F.4th 1289, 1294 (11th Cir. 2022). It applies where, as here:

> (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and

11

(4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (citing *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012)).

Each element is met here. As described above, the signage issue is identical, and was actually litigated by Forbes/Cohen Florida Properties—the sole member and controller of The Gardens Venture—during the prior litigation:

| **Forbes' Position Before the Fourth DCA:** | **Defendants' Rationale for Refusing to Sign the Development Applications:** |
|---|---|
| "Forbes contends that, even if Sears does have subleasing rights, **Dick's would have no right to install a sign as it is not permitted under the R.E.A** because Dick's is not a party to the R.E.A." SUF ¶ 38. | ███████████████████████████████ SUF ¶ 58 (N. Forbes Dep. Tr. at 230:13-24). |

This satisfies the first, second, and fourth elements of collateral estoppel. As to the third, the determination of that issue was critical and necessary to the Fourth DCA's judgment precisely because Forbes asserted it as a defense. Sears sought a declaration that it had "the contractual right to sublease." SUF ¶ 36. Forbes resisted that declaration by arguing that any sublease right did not include signage. SUF ¶ 38. The Court held: "[T]o conclude that the R.E.A.'s signage criteria impliedly prohibits a retail sublessee, such as Dick's from installing a sign . . . would effectively eviscerate Sears's right to sublease and render its express contractual rights merely illusory." SUF ¶ 43. Thus, it ruled that "Sears has the right to grant Dick's signage rights that Sears has under the Forbes-Sears Sublease and the R.E.A." *Id*.

Defendants were bound by the Fourth DCA's ruling when they refused to sign the Development Applications. Therefore, they knew their justification for doing so was false.

12

> 3. ***Defendants' Use of a Known False Justification to Deprive DSG of its Contractual and Business Relationships Constitutes "Improper Means" Under Florida Law.***

Defendants' reliance on a known false justification to interfere with DSG's business relationships was an "improper means" under Florida law. DSG does not dispute that Defendants had a "qualified privilege" to interfere with DSG's business relationship with Sears and Transform. However, "[t]he justification for intentional interference depends upon a balancing of the importance, social and private, ***of the objective advanced by the interference against the importance of the interest interfered with***, considering all circumstances among which the methods and means used and the relation of the parties are important." *McCurdy,* 508 So. 2d at 384 (emphasis added). *See also KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) (qualified privilege is overcome by, *inter alia*, "misrepresentations . . . or other improper conduct"); *Making Ends Meet, Inc. v. Cusick¸* 719 So. 2d 926, 928 n.1 (Fla. 3d DCA 1998) ("an ongoing situation where every time they got to a certain hurdle, another hurdle was created…[that] undermined that contractual relationship" and overcame the immunity afforded to the lessor defendant).

In *Nizzo v. Amoco Oil Co.*, 333 So. 2d 491, 493 (Fla. 3d DCA 1976), a lessee sued a lessor for tortious interference with its business by preventing assignment of the lease for an illegal reason—the race of the assignee. The lessor had a right to refuse consent to an assignment "without qualifications." *Id.* However, the District Court of Appeal reversed an order dismissing the claim because "[t]he law is clear that the contract may not give validity to illegal acts." *Id*. While there is no moral equivalency between the allegations in *Nizzo* and the facts at issue, there is little legal difference. Defendants' justification for refusing to sign the Development Applications was contrary to the established law as declared by the Fourth DCA. As such, in balancing "the importance, social and private, of the objective advanced by the interference against

13

the importance of the interest interfered with," no reasonable juror could find that Defendants' action was justified. *McCurdy*, 508 So. 2d at 384.

██████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████  SUF ¶ 59 (N. Forbes Dep. Tr. at 234:2-13).  Defendants are correct that the case should stop there.  Because Defendants' justification for interfering with DSG business relationships was known by Defendants to be contrary to binding law, the Court should find Defendants liable for tortious interference.

## CONCLUSION

For all the foregoing reasons, DSG respectfully requests that the Court grant its Motion for Partial Summary Judgment, and rule:

1. That Defendants are collaterally estopped from asserting that Sears could not grant DSG signage rights by sublease;

2. That Defendants used an improper method to interfere with DSG's business relationship with Sears and Transform;

3. That Defendants are liable to DSG for tortious interference with a contract or, in the alternative, for tortious interference with business relationship; and

4. That the parties' September 9, 2024 trial shall be limited to the amount of DSG's compensatory damages, the availability and amount of DSG's punitive damages, and the availability and amount of attorneys' fees to which DSG is entitled.

Dated: May 21, 2024

By: s/ *Nicole K. Atkinson*
Nicole K. Atkinson, Esq.
Anta P. Plowden, Esq.
GUNSTER YOAKLEY & STEWART
777 S Flagler Drive, Suite 500 E
West Palm Beach, FL 33401
(561) 650-0561
natkinson@gunster.com
aplowden@gunster.com
*Counsel for Plaintiff*

By: s/*Brendan E. Ryan*
Richard U.S. Howell, P.C.
Brendan E. Ryan
Mike Zolfo
Sarah Angelino
KIRKLAND & ELLIS, LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
rhowell@kirkland.com
brendan.ryan@kirkland.com
mike.zolfo@kirkland.com
sarah.angelino@kirkland.com
*Co-Counsel for Plaintiff*