UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80157-BER

DICK'S SPORTING GOODS, INC.,

Plaintiff,

v.

FORBES/COHEN FLORIDA PROPERTIES, L.P., and
THE GARDENS VENTURE, LLC,

Defendants.

_____/

**SUPPLEMENTAL ORDER REGARDING BANKRUPTCY ISSUE**

In my Order on Motions for Summary Judgment, I did not resolve all of the legal issues in this case related to the Sears bankruptcy. ECF No. 289. After further thought, I decided these issues needed to be resolved, pretrial, as issues of law. ECF No. 316 (taking ECF No. 299 under advisement and giving notice under Rule 56(f)). The relevant issues are now fully briefed. ECF Nos. 283, 299, 300, 307, 312, 331, 336. The summary judgment record was also supplemented with bankruptcy-related documents. ECF No. 324. I held oral argument on September 4, 2024. At oral argument, both sides agreed that these issues were properly resolved by the Court as issues of law, not by the jury as issues of fact. I incorporate by reference the Order on Motions for Summary Judgment.

The parties dispute three primary issues relating to the Sears bankruptcy. First, whether Transform obtained exterior signage rights that could be sublet to DSG. Second, whether Transform could form a post-bankruptcy contract with DSG. Third, whether any damages caused by Defendants' tortious interference ended as a matter of law under the Sears Reorganization Plan in October 2022.

## DISCUSSION

A. *Sears Bankruptcy*

Sears filed for Chapter 11 bankruptcy on October 15, 2018. It is undisputed that, at that time, both the Forbes-Sears Sublease and the DSG Sublease were executory contracts of the debtor.

The Bankruptcy Court approved an Asset Purchase Agreement (APA) dated January 17, 2019, that divided the debtor's assets into two categories — Acquired Assets (§2.1) and Excluded Assets (§2.2). Transform got the "Acquired Assets," which were defined as "all right, title and interest of the Business [i.e., Sears], in, to, or under all assets, properties and rights Related to the Business other than the Excluded Assets." APA §2.1, ECF No. 226-6 at 140. It is undisputed that the Forbes-Sears Sublease was one of the Acquired Assets.

Similarly, Sears' liabilities were divided into Assumed Liabilities (§2.3) and Excluded Liabilities (§2.4). The debtor retained the Excluded Liabilities and the Excluded Assets. As relevant here, the Excluded Liabilities included all liabilities "arising out of the ownership of the Acquired Assets or operation of the Business or the Acquired Assets prior to the Closing Date." §2.4(a). It also included "all Liabilities

2

relating to the payment or performance of obligations arising solely out of facts or circumstances in existence prior to the [APA] with respect to the Assigned Agreements." §2.4(b).

The Assumed Liabilities (which were transferred to Transform) included "all liabilities arising after the APA "relating to the payment or performance of obligations with respect to the Assigned Agreements." §2.3(b). "Assigned Agreements" included Designatable Leases, such as the Forbes-Sears Sublease. ECF No. 226-6 at 110.[1]

So, any pre-APA liabilities arising from the Forbes-Sears Sublease stayed with Sears. Any post-APA liabilities arising from that lease went to Transform.

As part of the process for approving the APA, Transform filed a Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction. SDNY Bankruptcy Case No. 18-23538, Docket Entry 1731. That document identified the Forbes-Sears Sublease as an unexpired lease that Transform proposed to assume and assign. *Id*. at 336.

---

[1] Under the APA, "Designatable Lease" included the "Operating Leases." ECF No. 226-6 at 116. "Operating Leases" meant "those leases or lease agreements (including ground leases) related to real properties identified in in Schedule 1.1(o) (together with all amendments, modifications, supplements, and renewals thereof)." *Id*. at 128–29. the Gardens Mall property (Sears store 1765) was listed in Schedule 1.1(o). *Id*. at 421.

Forbes objected to the Forbes-Sears lease being assumed and assigned. SDNY Bankruptcy Case No. 18-23538, Docket Entry 1932. Forbes argued (1) the lease had expired prior to the bankruptcy and was now, at best, a month-to-month lease, (2) Forbes retained a right of first refusal that preempted the proposed assignment, (3) regardless, the bankruptcy court should make clear that "nothing contained in any order approving the Global Sale Transaction or the assumption and assignment of the Sears Lease shall be deemed to, in any way, impact Forbes rights to continue to dispute and contest the propriety of the Dick's Sublease under the Governing Documents or otherwise and nothing in any such orders shall be deemed to, in any way, approve or determine any of the respective rights between the parties with regard to the Dick's Sublease." *Id*. ¶¶ 28–30.

While the objection was pending, on February 8, 2019, the bankruptcy court approved the sale of Sears' assets to Transform. SDNY Bankruptcy Case No. 18-23538, Docket Entry 2507. The bankruptcy court preserved Forbes' objection to the assumption and assignment of the Forbes-Sears Sublease for later resolution. *Id*. at 25 ¶3.

On April 19, 2019, Transform filed a Notice of Assumption and Assignment of Additional Designatable Leases that included the Forbes-Sears Sublease. SDNY Bankruptcy Case No. 18-23538, Docket Entry 3298. Forbes again objected. SDNY Bankruptcy Case No. 18-23538, Docket Entry 3484. Forbes argued any assumption must include the Governing Documents and any covenants running with the land

4

(including the REA). Forbes also argued that Transform must assume all of Sears' obligations under the Forbes-Sears Sublease.

B. *Settlement Agreement*

Forbes' objection was resolved through a Confidential Settlement Agreement ("Settlement Agreement") with an effective date of May 7, 2019. ECF No. 215-34. The parties to the Settlement Agreement were Forbes as "Landlord" and Transform Midco LLC, Transform Propco LLC, and Transform Operating Stores, LLC collectively as "Buyer" or "Transform." The parties agreed that, upon approval by the bankruptcy court, the Forbes-Sears Sublease "shall transfer to and be assumed by the applicable Buyer entity set forth in the Designation Notice (as applicable, "Tenant")." ECF No. 215-34 ¶1(a).[2]

The Settlement Agreement further said the Tenant would assume the lease subject to the existing covenants, including the REA:

> Tenant agrees to take the Designated Lease subject to, and to assume, abide by, and honor (i) all monetary obligations (including without limitation, the payment of all rent, maintenance charges and any and all other charges and assessments) payable by Tenant under the Designated Lease; (ii) all the terms, conditions, covenants and obligations to be performed by, and governing the rights of, tenant under the Designated Lease; and (iii) the terms, conditions, and restrictions set forth in any easements, reciprocal easement agreements, covenants, licenses, permits, municipal resolutions, ordinances, PUD, laws, or other similar encumbrances and restrictions applicable to the Tenant Leased Premises."

---

[2] No Designation Notice is in the record, but the lease ultimately was assigned to Transform Operating Stores LLC, so the circumstantial evidence suggests that Transform Operating Stores LLC was the designated "Buyer entity."

*Id.* ¶1(b).

Forbes agreed not to exercise its right of first refusal under the lease provided that Transform continue to operate the Sears store: "Tenant [must] continue [] to operate the Tenant Leased Premises in a manner consistent with the past practice of, and under the name of, Sears, Roebuck & Co., immediately prior to the Lease Assignment Date and Tenant's rights under the Designated Lease." *Id.* ¶1(e). "Tenant agree[d] to "operate under the 'Sears' trade name." *Id.* ¶1(g).

Forbes' agreement not to exercise its right of first refusal also was subject to the parties agreeing that nothing in the Settlement Agreement affected the proposed DSG Sublease. *Id.* §1(e). Defendants reserved all rights to oppose the sublease. Transform agreed that "any such lease, sublease or agreement or other arrangement shall remain subject to the express provisions of the [Forbes-Sears Sublease] with the Parties reserving all of their respective rights and defenses." *Id.* ¶1(f)

The parties contemplated that the Bankruptcy Court would enter an "order applicable to assumption and assignment of the Forbes-Sears Sublease (the "Assignment Order"). *Id.* ¶4. They agreed that the Assignment Order "shall (i) provide that this Settlement Agreement shall determine the relationship of the Parties and shall supersede any inconsistent terms of such Assignment Order, (ii) make clear that the assignment of the Designated Lease is not free and clear of Covenants, and (iii) shall not be inconsistent with the terms of this Settlement Agreement." *Id.*

C. *Assignment Order*

On May 13, 2019, the Bankruptcy Court entered an Order (I) Authorizing Assumption and Assignment of Certain Leases and (II) Granting Related Relief. ECF No. 324-1 ("the Assignment Order"). The Assignment Order authorized Sears to assume and assign the Forbes-Sears Sublease to Transform. *Id.* ¶11. It also made the assignment of the Forbes-Sears Sublease subject to "any interests, covenants, or rights applicable to such real estate leases to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits." *Id.* ¶25. Finally, the Assignment Order incorporated the terms of the Settlement Agreement:

> **Settlement Agreements**. Notwithstanding anything to the contrary in this Revised Assumption and Assignment Order, the Asset Purchase Agreement, Sale Order, Assumption and Assignment Order or any Designated Lease Notices, in the event that the Buyer (and/or its direct or indirect affiliates or subsidiaries) (the "Buyer Parties") entered into a settlement or other applicable agreement that by its terms governs the terms of assumption and assignment in connection with the above-captioned proceedings of any Designated Lease on **Exhibit A** (a "Landlord Agreement") with a counterparty to any such Designated Lease (including any landlord or other applicable party) (a "Counterparty"), the relationship of the applicable Buyer Parties and applicable Counterparty shall be governed and determined by the terms and conditions of the applicable Landlord Agreement, which shall supersede and control any inconsistent terms or provisions of this Order or any other prior Order relating to the assumption and/or assignment of any Designated Lease on **Exhibit A**; provided, however, that nothing in the applicable Landlord Agreement may alter the provisions of this Order relating to the Debtors' or the Sellers' obligations.

*Id.* ¶28.

D. *Assumption and Assignment Agreement*

The same day as the Assignment Order, Sears and Transform Operating Stores LLC signed an "Assignment and Assumption of Lease" (the "Assignment and Assumption"). ECF No. 283-1. Under the Assignment and Assumption, Transform took on "all of [Sears'] right, title and interest in and to and its obligations under the" Forbes-Sears Sublease. *Id*. ¶2. Transform also assumed all liabilities under the lease "to the extent such liabilities arise or accrue on or after the date [of the Assignment and Assumption] (the 'Assumed Lease Liabilities')." *Id*. at 4. Sears remained responsible for all liabilities under the lease that arose or accrued prior to the date of the assignment ("the Excluded Lease Liabilities"). *Id*. ¶2. The Assumption and Assignment also said, "In the event of a conflict between the terms and conditions of this Assignment and the terms and conditions of the [APA], the terms and conditions of the [APA] shall govern, supersede and prevail." *Id*. ¶8.

E. *Fifth Amendment to DSG Sublease*

The Fifth Amendment to the DSG Sublease was signed on June 27, 2019. ECF No. 215-35. In 2015, as part of the initial DSG Sublease, Sears had given a Guaranty of Termination Damages and Indemnity. The Fifth Amendment replaced that guaranty with a guaranty from Transform. *Id*. §C, ¶9.

The Fifth Amendment incorporated by reference several defined terms from the DSG Sublease. *Id*. ¶1. It modified Section 3.1 of that sublease. *Id*. ¶¶ 3,4. The Fifth Amendment ratified the existing sublease: "Except as amended herein, the Lease shall remain in full force and effect (except as enforceability may be limited by

8

applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and by general principles of equity). *Id.* ¶5. It also said, "If any conflict exists between the terms and provisions of the Lease and the terms and provisions of this Fifth Amendment, the terms and provisions of this Fifth Amendment shall govern and control." *Id.*

F. *Reorganization Plan*

On October 15, 2019, the Bankruptcy Court confirmed Sears' Chapter 11 reorganization plan. ECF No. 324-4. As part of that plan, any executory contract that had not been assumed and assigned was deemed rejected as of October 29, 2022. *Id.* §13.1.

## DISCUSSION

A. *Transform acquired exterior signage rights.*

Transform became a Major under the REA when it assumed the Forbes-Sears Sublease on May 19, 2019. Therefore, Transform had the right to give DSG external signage rights as part of the November 2019 Development Application.

The REA is a covenant running with the land. REA §24.1. Under Florida law, "to establish a valid and enforceable covenant running with the land arising from a landlord-tenant relationship, a plaintiff must show (1) the existence of a covenant that touches and involves the land, (2) an intention that the covenant run with the land, and (3) notice of the restriction on the part of the party against whom enforcement is sought." *Winn-Dixie Stores, Inc. v. Dolgencorp, Inc.,* 964 So. 2d 261, 265 (Fla. 4th DCA 2007). "Where a covenant 'runs with the land,' successors to the

property owner who made that covenant 'become liable as promisors upon the promise made by their predecessor,' even though they are succeeding to an ownership or possessory interest in the real property rather than assuming the obligations of a contract under an assignment." *Huck v. Kenmare Commons Homes Ass'n, Inc.,* 382 So. 3d 759, 764 (Fla. 1st DCA 2023). Covenants intending to provide a mutual or reciprocal benefit can be enforced by any party for whose benefit the covenant was enacted. *Rea v. Brandt,* 467 So. 2d 368, 369-70 (Fla. 2nd DCA 1985).

Transform had the right to enforce the REA, including its right as a Major to have exterior signage. First, there was an enforceable covenant running with the land. The REA limits the use of the leased land; Section 24.1 of the REA evinces an intention that these limitations run with the land; and, Defendants — as signatories to the REA — are aware of the restrictions.

Second, Transform could enforce the REA because it was an intended beneficiary of the covenant. By its own unambiguous terms, the REA was for the "exclusive benefit" of the initial Parties and the Fee Owner, as well as being "binding upon and inur[ing]] to the benefit of the respective successors and assigns of the Parties." REA §§ 24.3, 24.7 ECF No. 199-6 at 71, 79. Sears was an initial Party. Transform was Sears's successor and assign.

Third, Transform was a "Major" under the REA. The REA defines a Major as "Macy, Sears, or Federated *and* their respective successors and assigns." REA § 1.15, ECF No. 199-6 (emphasis added). It defines a "Party" to include "any successor Person(s) acquiring the leasehold and/or fee interest, as the case may be, of a Party

in or to any portion of such Party's Parcel." REA §1.22, ECF No. 199-6 at 14. Under the Assignment and Assumption, Transform took on "all of [Sears'] right, title and interest in and to and its obligations under the [Forbes-Sears Sublease]" as well as all post-assignment liabilities. ECF No. 324-1. Because Transform acquired Sears' leasehold interest in the Sears Parcel, it became a Party to the REA. And, because it was Sears' assignee, it became a Major under the REA.

Fourth, the right to have exterior signs could be given to a Major's sublessee. ECF No. 289.

To summarize, the REA was a covenant running with the land. Transform had the right to enforce the REA. The REA gave Majors the right to have exterior signs. Transform was a Major, so it had the right to have exterior signs. That right could be sublet to DSG.

In response, Defendants make three incorrect arguments. First, in multiple pleadings they argue it is relevant to the Court's analysis that the Settlement Agreement required Sears to operate the department store at the Gardens Mall after the Forbes-Sears Sublease was assigned to Transform. *See, e.g.,* ECF No. 283 at 4–5. ("[T]he Bankruptcy Court settlement agreement . . . requires Sears and Transform to 'operate under the 'Sears' trade name.'"); *Id.* at 5 (Sears agreed "to operate the premises under the Sears name." (citing Settlement Agreement)); *Id.* at 6 (After the May 13, 2019, assignment "Sears, as a debtor in possession, was bound by its prior agreements to continue to operate the premises as a Sears, as it did in the past."); ECF No. 312 at 3 ("Section 11 of the Sears-Forbes Sublease and the Settlement

Agreement *required Sears to remain the operative party* and prohibited any assignment or assumption by Transform.") (emphasis added); ECF No. 307 at 7 ("The Settlement Agreement, the Sale Order, and the Order Confirming Plan reflected that Sears would continue to operate the premises under the Sears name.").

At oral argument, upon questioning from the Court, Defendants reluctantly conceded that the Settlement Agreement said no such thing. It said that the "Tenant" — Transform Operating Stores — had to continue to operate a store under the Sears brand. ECF No. 215-34 ¶¶ 1(e), 1(g). So, after the Assignment and Assumption, Sears had no continuing obligation to operate a store on the mall premises. In fact, Sears could not have been the Tenant because it was not a "Buyer entity."

Second, Defendants say Section 11 of the Forbes-Sears Lease and the Settlement Agreement prevented Transform from "automatically becom[ing] a party to the REA simply by acquiring Sears' leasehold interest through the bankruptcy proceedings. ECF No. 312 at 3. Third, they say Transform could not give exterior signage rights to DSG because Sears retained the exterior signage rights. ECF No. 307 at 9 ("Sears, the debtor-in-possession, which still owned the DSG Sublease and was the Major tenant under the REA, was the only party which could assign its sign rights or lease to DSG at the time of the third development application.") (citing Forbes-Sears Sublease §§ 11(a), 11(b), Settlement Agreement)).

None of the authorities cited by Defendants support the conclusion that Transform did not become a Party and a Major under the REA, with accompanying

exterior signage rights. As noted above, the REA clearly and unambiguously said that a Major's assignee became a Party and a Major. REA §§ 1.15, 1.22.

Section 11 of the Forbes-Sears Sublease did not require Sears to continue to operate a department store at the Gardens Mall, nor did it prohibit Transform from assuming that sublease and becoming a Major under the REA. Section 11 is titled "Assignment and Subletting." Section 11(a) says Sears had the right to assign the lease, but (1) the assignment had to be subject to the terms of the REA, and (2) assigning the lease did not relieve Sears of its obligations under the lease, unless Sears was also relieved of its obligations under the REA. ECF No. 199-4 at 17; Forbes-Sears Sublease, §11(a).[3] The relevant part of Section 11(b) says an assignee or sublessee must "assume all of [Sears'] obligations under this Lease except for Tenant's obligation set forth in the R.E.A. relative to the use of its trade name." So, read together Sections 11(a) and 11(b) say that, unless Sears was relieved of its obligations under the REA, Sears and its assignee or sublessee both would have the same, simultaneous, obligations under the sublease, except that the assignee/sublessee would not have to use the Sears trade name.

---

[3] Section 11(a) says in full:

> Tenant shall have the right to assign this Lease and to sublet from time to time the Demised Premises or any part thereof; subject however, to the terms and provisions of the R.E.A. No such assignment or subletting shall relieve Tenant of its obligations under this Lease, except that if Tenant would be relieved of its obligations under the R.E.A., it shall be relieved of its obligations hereunder.

When was Sears relieved of its obligations under the REA? When it transferred all of its rights to the Sears Parcel to Transform. Here is why. Under Section 16.3(b) of the REA, if a "Major shall transfer all of its Parcel, such Major shall be released from all liability thereafter arising hereunder and cease to be a Party [after] the Transferee shall become liable for the terms, conditions, covenants and agreements in this REA thereafter to be kept, observed and performed by its respective Transferor." REA §16.3(b), ECF No. 199-6 at 61. Section 16.3(b) also said the transferring Major could be released from liability only if the following conditions were satisfied: (i) "a duly executed and acknowledged copy, in recordable form, of the instrument by which the Transferee shall become liable for the obligations of its Transferor shall be delivered to the other Parties hereto, which instrument shall be reasonable satisfactory to counsel for such other Parties;" (ii) the transferor paying all outstanding amounts due to the other REA Parties, and (iii) there are no uncured defaults of the REA by the transferor.

Under the Assignment Order, Sears transferred all of its parcel to Transform on May 13, 2019. Under the Settlement Agreement, as incorporated into the Assignment Order, Transform took the assignment subject to "any easements, reciprocal easement agreements, covenants, licenses, permits, municipal resolutions, ordinances, PUD, laws, or other similar encumbrances and restrictions." Settlement Agreement, ECF No. 215-34 ¶1(b). There is no evidence that Sears owed outstanding debts to the other REA Parties on the assignment date, or that there were any

uncured defaults. Finally, the publicly-filed Assignment Order was a sufficient instrument to transfer the Sears leasehold to Transform.

Read together, these provisions of the REA and the Forbes-Sears Sublease make pragmatic sense. If Sears only sublet part of its space, Sears and the sublessee would be operating simultaneously. As operating businesses, both had to be bound by the REA and the Forbes-Sears Sublease. That's what Sections 11(a) and (b) of the lease say. The sublessee would not be operating a Sears-branded store, so it was not required to assume obligations relating to that trade name. That's what Section 11(b) of the lease says. If Sears assigned away all of its rights to the Sears Parcel, it ceased operating, so there was no reason for it to have ongoing obligations or rights under the REA or the Forbes-Sears Sublease. That's what REA Section 16.3(b) and Lease Section 11(a) say. And, if Sears gave all of its rights under the Forbes-Sears Sublease to the assignee, then the assignee became a Major. That's what REA Section 1.15 says.

So, on May 13, 2019, when the Forbes-Sears Sublease was assigned to Transform, Sears ceased to be a Party to the REA and was released from all obligations under the REA. Once Sears was released from its obligations under the REA, Sears was also released from all obligations under the Forbes-Sears Sublease. And, because Sears ceased to be a Party to the REA, it could no longer have external signage rights under the REA. Transform became the Major on that date and acquired the exterior signage rights.

Defendants mistakenly cite Section 11(b) for the idea that Sears "could not assign its 'obligation set forth in the REA relative to the use of its trade name.'" ECF No. 307 at 6–7. That is not what Section 11(b) says; it requires an assignee to assume all of Sears' obligations under the sublease other than the obligation under the REA "relative to the use of its trade name." So, the assignee is not *required* to assume the REA's trade name related obligations. Nothing in Section 11(b) says the assignee cannot assume the trade name. That is precisely what happened in the Settlement Agreement. With Forbes' approval, Transform agreed to operate under the Sears trade name.

In any event, whether Sears remained a party to the REA is irrelevant. Nothing in the REA or the Forbes-Sears Sublease says that both Sears and Transform could not simultaneously be Majors. The REA defines a Major as "Macy, Sears, or Federated *and* their respective successors and assigns." REA § 1.15, ECF No. 199-6 (emphasis added). It does not say that an existing Major cannot share that status with its assignee.

For all these reasons, Transform became a Major under the REA on May 13, 2019, with exterior signage rights that could be sublet to DSG.

B. *DSG Sublease*

The parties dispute whether, as a matter of law, a contract existed between Transform and DSG in November 2019 with which Defendants could have tortiously interfered. Defendants say (1) the DSG Sublease remained an asset of the bankruptcy estate that was never assumed and assigned to Transform, ECF Nos. 196 at 15–16,

225 at 12–15, 283 at 5–6, 307 at 7–9; (2) the Bankruptcy Code prevented Transform and DSG from forming a separate sublease outside of the bankruptcy until at least 2022 when the DSG Sublease was rejected as part of the Sears reorganization plan, ECF No. 307 at 13–14; and, (3) no new contract was formed because the Fifth Amendment lacked the necessary terms. ECF Nos. 225 at 14, 307 at 13. They also say that because the DSG Sublease was rejected in October 2022, DSG had no damages after that date.

In response, DSG says (1) even if the DSG Sublease was rejected in the bankruptcy in 2022, that breach did not terminate the contract or extinguish DSG's right to continue the sublease or amend it, ECF No. 300 at 9–10; (2) Defendants lack standing to challenge the validity of the Fifth Amendment. ECF Nos. 243 at 14, 300 at 11–12); (3) DSG took on the DSG Sublease as an "Assumed Lease Liability" under §2.3 of the APA and the Assignment and Assumption, ECF Nos. 243 at 12–13, 300 at 9; and (4) the Fifth Amendment was a sufficient writing to create a new contract between DSG and Transform, ECF Nos. ECF No. 229 at 20–21, 243 at 12–13, 300 at 10–11.

Defendants did not respond on the merits to DSG's first two arguments about lack of standing or the legal effect of rejecting an executory contract. ECF No. 312, so these arguments are conceded:

> A "party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014). So, by not responding to an opposing party's legal argument, a party concedes that argument *See, e.g., Est. of Pankey by Terry-Brown v. Carnival Corp.*, No. 22-cv-24004,

17

2023 WL 5206032, at *2 (S.D. Fla. Aug. 14, 2023) (citing *Jones*); *Campbell v. Boies, Schiller, Flexner LLP*, 543 F. Supp. 3d 1334, 1341 (S.D. Fla. 2021) (same); *Worley v. Carnival Corp.*, No. 21-cv-23501, 2023 WL 1840154, at *2 (S.D. Fla. Jan. 30, 2023) (collecting cases), *report and recommendation adopted*, No. 21-cv-23501, 2023 WL 3028038 (S.D. Fla. Apr. 20, 2023).

*Dick's Sporting Goods, Inc. v. Forbes/Cohen Fla. Properties, L.P.,* No. 20-cv-80157, 2023 WL 5831467, at *4 (S.D. Fla. Sept. 8, 2023) (ECF No. 160).

For the reasons explained in DSG's pleadings, the Bankruptcy Court's Assignment Order transferred the DSG Sublease from Sears to Transform as an Assumed Lease Liability under the APA. ECF No. 300 at 8-9.[4] At that point, the DSG Sublease ceased to be an asset of the bankruptcy estate. Having acquired the DSG Sublease in this way, Transform had the legal authority to amend it and to separately sublease it to DSG without further approval from the Bankruptcy Court.

Defendants say the Settlement Agreement required Transform to take the Forbes-Sears Sublease subject to the REA, and did not "provide that the Dick's Sublease . . . was assumed or assigned." ECF No. 307 at 10–11. They note that the Settlement Agreement also reserved both sides' rights, claims, and defenses in the state court litigation between Sears and Forbes. They say, without explaining why, that this reservation of rights, "necessitated that Sears's rights under the Dick's Sublease be retained." ECF No. 267 at 10. Defendants also say there were unresolved

---

[4] This Order was the functional equivalent of a separate assumption and assignment order for the DSG Sublease.

issues with the Sears guarantee that precluded the DSG Sublease from being assumed and assigned without approval from the Bankruptcy Court. *Id.* at 11.

Nothing in the Settlement Agreement precluded Transform from taking over the DSG Sublease. It is irrelevant that there was no court order specifically stating that the DSG Sublease was assumed and assigned to Transform. For the reasons argued by DSG in its pleadings, the DSG Sublease was derivatively assumed and assigned as part of the court-approved assignment of the Forbes-Sears Sublease. Nothing in the Settlement Agreement said that the DSG Sublease was *not* being transferred to Transform. The reservation of rights was just that — a reservation of arguments and claims in a separate legal proceeding. It was not a substantive resolution of a disputed fact or legal issue in the bankruptcy. And, the issue of whether the DSG Sublease could be assigned to Transform was not part of the state court litigation.

In the alternative, for the reasons explained in DSG's pleadings, the Fifth Amendment was a sufficient writing to create a new contract between Transform and DSG. It adequately incorporated the terms of the DSG Sublease to create a contract as a matter of law. Even assuming the DSG Sublease remained in the Sears bankruptcy estate until 2022, the leasehold for the Sears Parcel did not.

Finally, both on the merits and procedurally, I reject Defendants' argument, fully articulated for the first time at oral argument, that the automatic stay or Bankruptcy Code Section 365(h) limited Transform's right to sublet that leasehold to DSG in 2019. A party cannot raise an argument for the first time at oral argument.

19

*Farmworker Ass'n of Fla., Inc. v. DeSantis,* No. 23-cv-22655, 2023 WL 8878306, at *11 (S.D. Fla. Dec. 21, 2023).[5]

### C. *Motion in Limine*

I took under advisement DSG's Motion *in Limine* Regarding the Sears Bankruptcy. ECF Nos. 316, 299. That motion asked the Court to "exclude evidence or argument suggesting that the treatment of the DSG Sublease or the REA in the Sears bankruptcy provides any defense to DSG's claims." ECF No. 299 at 2. DSG does not ask to exclude evidence that the bankruptcy occurred. ECF No. 331 at 10–11, 13–15.

DSG says that causation and damages must be analyzed on a "but for" basis. They say any evidence or argument that the DSG Sublease was rejected in the Sears

---

[5] Defendants did say in a footnote to their Summary Judgment Response that the Fifth Amendment could not be a free-standing, new agreement between Transform and DSG because "Transform could not legally enter into a lease which required Sears, a debtor subject to a bankruptcy stay, to guarantee performance as to a lease to which it was not a party. To do so would have required approval of the bankruptcy court, which was never sought." ECF No. 225 at 13 n. 8. This footnote does not cite the automatic stay provision of the Bankruptcy Code or Section 365. It is not fully developed or properly presented. *Beres v. Daily J. Corp.,* No. 22-cv-60123, 2022 WL 805733, at *6 (S.D. Fla. Mar. 8, 2022), ("arguments not supported and properly developed are deemed waived."), *vacated on other grounds sub nom. Delaney v. Daily J. Corp.,* No. 22-gg-10788, 2023 WL 2025592 (11th Cir. Feb. 13, 2023); *see Bridges v. Morgan,* 2022 WL 342905, at *4 (11th Cir. Feb. 4, 2022) (parties cannot "raise [an] issue in a perfunctory manner without supporting arguments and authority"); *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n,* 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief."); *Espinoza v. Galardi S. Enterprises, Inc.,* No. 14-21244, 2018 WL 1729757, at *4 (S.D. Fla. Apr. 10, 2018)("a footnote is an incorrect place for substantive arguments on the merits"). Moreover, the Fifth Amendment did not obligate Sears as a guarantor; it released Sears from its guarantee and substituted Transform in its place.

bankruptcy and thereby affected causation or damages is irrelevant and would be unduly confusing for the jury. *Id*. at 3–4; ECF No. 331 at 10–11.

In response, Defendants say they should be allowed to argue that (1) the Sears-DSG relationship was terminated when Sears rejected the DSG Sublease on October 29, 2022, (2) DSG did not attempt to have Sears assume the DSG Sublease, (3) Sears did not attempt to assume and assign the DSG Sublease to Transform, (4) Sears did not attempt to transfer its exterior signage rights to Transform, and (5) any Transform-DSG relationship could not begin until after the Sears-DSG relationship ended. ECF No. 307 at 11.

For the reasons discussed above, (1) the DSG Sublease was not rejected in the Sears bankruptcy, (2) as Sears' assignee, Transform acquired exterior signage rights under the REA on May 13, 2019, and (3) after Assignment and Assumption, Transform was free to enter into a new relationship with DSG that included subletting exterior signage rights. Therefore, all of the arguments Defendants want to make are irrelevant and contrary to this Court's rulings.

**ACCORDINGLY, it is ORDERED that:**

1. Partial summary judgment is entered in favor of Plaintiff on the issue of whether a valid contract existed for purposes of Count I at the time of the November 2019 Development Application.

2. Plaintiff's Motion i*n Limine* Regarding the Sears Bankruptcy [ECF No. 299] is GRANTED.

3. In this Order and in the Summary Judgment Order [ECF No. 289], the Court now has resolved the interpretation of the REA as a matter of law. It has also resolved the legal implications of the Sears bankruptcy and the Fifth Amendment to the DSG Sublease on the issues to be tried. These interpretations are binding on the parties for purposes of trial. No contrary arguments may be made to the jury.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 6th day of September 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE